SUSAN M. BAYOR

*v.*

THE AMERICAN TRUST AND SAVINGS BANK, Assignee.

*Filed at Ottawa April 1, 1895—Rehearing denied October 11, 1895.*

BANKS—*unfulfilled promise of banker to make deposit special does not make the deposit a trust fund.* The mere promise of a banker, on giving an ordinary certificate of deposit, that he will place the money deposited in a separate package, which he makes no attempt to do, is insufficient to change the ordinary relation of debtor and creditor as to the deposit.

*Bayor v. Estate of Herman Schaffner & Co.* 51 Ill. App. 180, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. FRANK SCALES, Judge, presiding.

The firm of Herman Schaffner & Co. was engaged in the banking business in Chicago for a considerable period, and on June 3, 1893, made an assignment for the benefit of its creditors to the American Trust and Savings Bank, the appellee herein. At the time the assignment was made, Susan M. Bayor, the appellant, was the holder of a certain certificate of deposit issued to her by said banking firm, of which the following is a copy:

"$2700.00.                    HERMAN SCHAFFNER & CO.,
No. 6501.                    *Chicago, June 1, 1893.*

"Susan Bayor has deposited in this bank twenty-seven hundred ($2700) dollars, payable to the order of herself, on the return of this certificate.

HERMAN SCHAFFNER & CO.

"Countersigned—A. SCHWARTZ, *Teller.*"

*Certificate of Deposit.*

That certificate was the last one of eight certificates of deposit precisely alike in form, and varying only in dates and amount, which had been issued by the firm to appellant. The first certificate was for $3350, and was issued and bore date on April 26, 1893.

The circumstances under which the first certificate was issued were substantially as follows : W. B. Cunningham was a depositor and kept a general account with said banking firm. Being indebted to the appellant for moneys received for her in the sale of some real estate, Cunningham drew his check on said firm in favor of the appellant for the sum of $3400, and accompanied her and her husband to the bank. Arriving at the bank, Cunningham asked appellant if she wanted the money or wanted to leave it in the bank. No suspicions existed at that date of the insolvency of the banking firm. Appellant replied that she did not want the money, but would prefer to leave it there temporarily. Expressing a further wish not to open an account with the bank against which she could check, Cunningham referred her to the teller to arrange matters in accordance with her wishes, and went

away. It was thereupon arranged between her and the
teller of the bank that she should receive $50 in cash and
a certificate of deposit for the balance of the check,
$3350, payable to her order on demand, dated that day,
April 26, 1893, and it was so done, and such certificate was
delivered to her by the teller, with the remark, "If you
want any of this money, come down and surrender this
certificate and I will give you another." Three days later,
on April 29, the appellant surrendered that first certifi-
cate, drew $200 and took a new certificate of deposit for
$3150. The same conduct was repeated on May 2, when
appellant drew $50; on May 11, when she drew $50; on
May 17, when she drew $50; on May 19, when she drew
$50; and on May 27, when she drew $50,— the appellant
in each instance taking a new certificate of deposit for
the reduced amount, the last one, issued May 27, being
for the sum of $2900. After the first transaction, result-
ing, as stated, in the giving to appellant of the first cer-
tificate of deposit for $3350, the appellant does not appear
to have been personally present in the bank, but was rep-
resented there by her husband, whom she had authorized
to draw the sums mentioned and take new certificates
payable to her order. On the first day of June, 1893, John
M. Bayor, the husband of appellant, again went to the
bank and took with him the certificate for $2900 that had
been issued on May 27. He went there at the request
of appellant to get $200, and the certificate was duly en-
dorsed by appellant, as had been the case with all the
previously surrendered certificates.

The controverted question of fact presented by the
record is as to what occurred between the husband of
appellant and Schaffner on the first of June, when the
former was in the bank with the certificate of deposit for
$2900. Schaffner died shortly afterwards, and, in conse-
quence, his testimony was never heard upon the question.
Appellant introduced her husband and one W. C. Scott as
witnesses, and they testified in regard to the conversa-

tion and occurrences that took place at that time.   The substance of their testimony is, that when Bayor went into the bank on June 1 for the purpose of surrendering the $2900 certificate and getting $200 in cash and a new certificate for $2700, he observed a condition of things which made him suspicious of the soundness of the bank, and that he then partly concluded to withdraw all the money represented by the certificate, but before fully deciding upon what he should do he had a conversation with Schaffner, in which it was agreed between himself and Schaffner that he should draw out $200 and take a certificate of deposit for the remaining $2700, and that the $2700 so left should be put away in a separate package and kept until he should come again for it as he needed it.   The evidence is conclusive that neither the $2700, nor any part of it, was ever separated from the other funds of the bank or put away in a separate package for appellant or her husband, but remained just as it always had existed,—as a mere credit to appellant on the books of the banking firm.

The present appeal grows out of a petition that was filed in the county court of Cook county, which asked that the assignee of Herman Schaffner & Co. should be required to pay to appellant, out of the funds in his hands, as a preferred claim, the sum of $2700.   At the hearing the court found that the petitioner was neither legally nor equitably entitled to the return of the money to her, and dismissed the petition for want of equity, and that judgment and decree were afterwards affirmed in the Appellate Court for the First District.

W. B. CUNNINGHAM, and SAMUEL B. KING, for appellant:

The deposit being special, by agreement of the parties, is a trust fund.   A special deposit arises either by agreement or by the nature of the deposit.   1 Morse on Banking, (3d ed.) sec. 183.

A deposit is general unless the depositor makes it special, or deposits it expressly in some particular capacity. *Brahm* v. *Adkins*, 77 Ill. 263.

This doctrine received further recognition in the case of *Star Cutter Co.* v. *Smith*, 37 Ill. App. 212, where money deposited to meet a check which was never presented was held to be upon a trust by the receiver, appointed upon the insolvency of the bank.

By agreement or order a special deposit may be changed into a general or specific deposit, or a general into a specific or special.     Morse on Banking, (3d ed.) sec. 188; *St. Louis* v. *Johnson*, 5 Dill. 211; *People* v. *Bank*, 96 N. Y. 32; *Bank* v. *Henninger*, 105 Pa. St. 496; *Farley* v. *Turner*, 26 L. J. 710.

MORAN, KRAUS & MAYER, for appellee:

In Pomeroy's Equity Jurisprudence (sec. 1058) it is said: "If the trust property has been transferred to a *bona fide* purchaser without notice, or has lost its identity, the beneficial owner must, and under other circumstances may, resort to the personal liability of the wrongdoing trustee." *School Trustees* v. *Kirwin*, 25 Ill. 62; *Bank* v. *Goetz*, 138 id. 127; *Wetherell* v. *O'Brien*, 140 id. 146; *Accident Ass.* v. *Jacobs*, 141 id. 261.

If a collecting bank mingles the proceeds with its general funds, so that the proceeds of the collection can not be traced, and then fails, the bailor, principal or *cestui que trust* is placed in the position of a simple creditor.     *Bank* v. *Armstrong*, 39 Fed. Rep. 684; *Illinois Trust and Savings Bank* v. *Bank*, 15 id. 858; *Bank* v. *Dowd*, 38 id. 172.

Mr. JUSTICE BAKER delivered the opinion of the court:

We are satisfied that Schaffner did not agree to put the $2700 away in a separate package, and that John M. Bayor made no request that he should do so.   In our opinion the statements of the husband of appellant and

of the witness Scott are unworthy of belief, and that in no event could a decree of court safely be based on them. Waiving all questions of contradictions and inconsistencies in the stories that they tell, the theory of fact upon which appellant's contention is founded, is, when considered in the light of the surrounding circumstances, wholly improbable and unreasonable.   If Bayor had been suspicious of the soundness of the bank he would have drawn out the whole of the §2900, instead of merely getting the $200 that his wife had sent him for, and taking a certificate of deposit, as always theretofore, for the residue.   It is equally improbable that he made a request that the money still left in the bank should be placed in a separate package for a few days.   He was wholly ignorant and uninformed in regard to banking business, had never done any business with a bank other than that connected with the transactions in question, and manifestly did not know the difference between a special deposit and a general deposit in a bank, or that the relation between the bank and the depositor would be different in the one case from what it would be in the other ; and occupying this standpoint, and Schaffner being almost or quite a stranger to him, it is incredible that he was suspicious of the soundness of the bank, and yet satisfied when he received a certificate exactly like those given on all prior occasions, and a vague and indefinite assent from Schaffner to his request to put the money in a package by itself.

To our minds it is suggestive that the original petition filed by appellant on June 10, 1893, proceeded upon the theory that the bank was insolvent on June 1, 1893,—the date of the last certificate of deposit; that Schaffner & Co. knew at that time that they were insolvent, and misrepresented to appellant that the money would be safe in their hands, and that therefore the title to the money did not pass to the bank, but remained in the petitioner; and that on the 25th of June the petition was so amended as to charge that the fund "was, by the terms and conditions

of said deposit, to be kept in a separate and distinct package, and was not to be mingled with the general funds of the bank." And it is also significant that prior to the amendment the husband of appellant had read in a newspaper an interview with one of the attorneys for the assignee of the bank, in which such attorney had said that if appellant was a depositor, and the $2700 had been mingled with the general funds of the bank, then she had lost it.

But even if we should assume that the husband of appellant requested Schaffner to put the $2700 away in a separate package, and that the latter promised so to do, yet the evidence shows that such promise never was complied with, and that said money never was separated from the general funds of the bank, and that no steps whatever were ever taken to effect such separation, by either placing the money in a distinct parcel, or by making any entry upon the books of the bank indicating a withdrawal from the general funds of the firm, or by giving a receipt containing even an intimation of a special deposit. On the contrary, an ordinary certificate of deposit was given for the money not drawn from the bank —just as had been done on all former occasions.

It has frequently been announced as the law of this State, that even in a case where a definite and actual trust fund, which possesses all the attributes of a separate and distinct identity, has been so mixed and mingled with other funds as to render identification impossible, the *cestui que trust,* in the event of the insolvency of the trustee, is remitted to the position and the rights of a general creditor; and where the relation between the parties is primarily that of debtor and creditor, and there is a mere unperformed agreement on the part of the debtor to create a specific fund which shall possess a separate identity, and to hold the same in trust, it would be illogical and inconsistent with these adjudications to hold that such creditor occupies a stronger position than one

who is primarily the beneficiary of a distinct and identified trust fund.   We regard the cases of *Trustees of Schools* v. *Kirwin,* 25 Ill. 73, *Otis* v. *Gross,* 96 id. 612, *Union Nat. Bank of Chicago* v. *Goetz,* 138 id. 127, *Wetherell* v. *O'Brien,* 140 id. 146, and *Mutual Accident Ass.* v. *Jacobs,* 141 id. 261, as conclusive against the contentions urged herein by appellant.

We think that no different rule than that to be formulated from the cases above mentioned is held in *Kirby* v. *Wilson,* 98 Ill. 240, which is cited by appellant and largely relied on.   That case was first before the court in *Wilson* v. *Kirby,* 88 Ill. 566.   A portion of the proceeds of the sale of certain cattle was in the hands of Alexander, the deceased, at the time of his death, and was paid over to Kirby, his executor.   It was there said: "These proceeds stood in the place of the cattle sold, as their substitute or representative, and were the property of the Wilsons, as the cattle were, under the contract, and can be traced and identified as their particular property, and may be followed into the hands of the executor, and they have a preferable claim thereto over general creditors."   And it was upon the theory that there had been a sufficient identification of $12,143.88 of the $20,500 found upon the person of Alexander at his death as a part of the proceeds of the Wilson cattle disposed of by Alexander, that the judgment was affirmed in *Kirby* v. *Wilson.*

We find no substantial error in the record.   The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*