*In re* ESTATE OF HENRY SEITER, Insolvent,

*v.*

RICHARD MOWE *et al.*

*Opinion filed October 16, 1899—Rehearing denied December 13, 1899.*

1. PRACTICE—*motion undisposed of at term is continued by operation of law.* A motion to set aside an order may be entered during the term at which such order was made, and, if undisposed of, it stands continued until the next term by operation of law, without any formal order of continuance.

2. VOLUNTARY ASSIGNMENTS—*when general creditors are not estopped to object to allowance of claim as a preference.* The failure of general creditors to file objections to the report of an assignee within thirty days, concerning which no order of approval was entered, does not estop them from subsequently making the objections, when the judicial power of the court is invoked for the allowance of a reported claim as a preference, which the assignee had paid without his report being approved.

3. SAME—*when beneficiary cannot enforce claim for trust fund as a preference.* The owner of a trust fund, which the trustee has mingled with his own money, is not entitled, upon the trustee's insolvency, to enforce his demand as a preferred claim against the trustee's estate assigned for the benefit of creditors, unless the fund can be identified or distinguished from other assets of the estate.

4. SAME—*trust fund mingled with insolvent's property passes to the assignee.* A trust fund so blended with the mass of the trustee's property that it cannot be distinguished passes to his assignee for the benefit of all creditors.

PHILLIPS, J., dissenting.

*Estate of Henry Seiter* v. *Mowe,* 81 Ill. App. 346, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the County Court of St. Clair county; the Hon. E. C. RHOADS, Judge, presiding.

DILL & WILDERMAN, and TURNER & HOLDER, for appellant.

HORNER & WINKELMANN, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellant, Weir, was named as the assignee in a voluntary assignment for the benefit of creditors by Henry Seiter, of St. Clair county, December 10, 1894. As such assignee, notes, accounts, cash and chattel property amounting to about $45,000 came into his hands. In 1888 Seiter had been appointed conservator of one Lucetta Nichols, an insane person, and had received of her money $2206. For the purpose of this opinion it may be conceded that trust fund was mingled with his individual moneys in his private bank at Lebanon, this State, and that in February, 1895, being after the assignment, he made a final report showing the amount due from him as such conservator to be $1977.66, with which report he tendered his resignation, and one Isaac Barton was appointed his successor. No funds whatever were paid over to Barton, and on the fifth of March following he filed a claim against the assigned estate of Seiter, as follows: "To amount of money in the hands of said Henry Seiter, as conservator of Lucetta Nichols, an insane person, and mingled with his funds and property at the time of his assignment, $1977.06." It was duly sworn to, and urged as a preferred claim. On April 5, thereafter, the assignee reported to the county court this with other claims filed to that time. No objections had been made by any one to said claim. On June 10 of the same year L. D. Turner was appointed successor of Barton, as such conservator. On the 4th of September, 1897, Weir, the assignee, filed another report in the county court, of moneys collected and disbursements made, showing the payment of the Nichols claim, which then amounted to $2224.18, and asked the court to approve that report and enter an order to pay dividends. Thereupon an order was entered that all objections to the report be filed by the 14th of that month. Appellees, being general creditors of Seiter, on the 11th of that month, within the time limited, did file objections to the allowance of the aforesaid claim as

a preference and to allowing the assignee credit for its
payment, alleging that the distribution of the assigned
property should be made *pro rata* to all the creditors of
the estate.    These objections were set down for hearing
on the 23d of the month, and on that day overruled by
the court and the assignee's report approved.    On the
29th of October, following, appellees entered their mo-
tion to set aside that order, and on the 22d of the next
month their motion was allowed and the order of Sep-
tember 23 vacated and set aside.    Afterwards a hearing
was had upon the report and objections of appellees, and
the matter held under advisement until February 17, 1898,
when a decision was rendered by the court sustaining the
objections of appellees, and refusing to approve the re-
port of the assignee as to the payment of the Nichols
claim, and refusing to allow the assignee credit for its
payment, and ordering him to recover the money back
from Turner.    From that decision the assignee appealed
to the Appellate Court for the Fourth District, where the
judgment of the county court was affirmed, and hence
this appeal.

It is insisted that the judgment below should be re-
versed, upon the ground that at the time it was entered
the court had ceased to have jurisdiction of the subject
matter of the judgment.    This position is predicated upon
the theory that when it overruled appellees' objections on
the 23d of September, 1897, and approved the assignee's
report, it had no further jurisdiction over the matter.
This position we regard as untenable.    The law terms of
the county court of St. Clair county are fixed by statute
for the months of March, July and November.    The order
of approval (September 23, 1897,) must have been as of
the July term of that year.    The motion to set aside that
order, being made on the 29th day of October following,
was also of that term, the November term not beginning
until the next month.    The court had control of its rec-
ord and judgments during that term, and, having entered

the motion, then could properly continue it for final determination until the next term, which it evidently did, the decision being rendered November 22. Whether there was any formal order of continuance or not is immaterial. The motion being undisposed of at the end of the July term, would, with the adjournment of that term, be continued by operation of law.

It seems from a recital in the order of November 23, overruling the objections and approving the report, that it was made upon an understanding by the court that objector's counsel consented thereto, and it seems to be thought by counsel for appellees that that fact is important in determining the question of jurisdiction to set-aside the order. We do not so regard it. That fact may have furnished a reason for the exercise of the jurisdiction, but the power of the court to set aside the order was complete, without reference to the reason which may have called it into exercise.

It is also urged, that inasmuch as no objections were made to the assignee's report of April 5, 1895, in which he reported the Nichols claim, appellees could not object to it on the second report. Section 4 of the Voluntary Assignment act provides that the assignee shall, at the expiration of three months from the time of first publishing notice for the presentation of claims, report and file with the clerk of the county court a list, under oath, of all creditors of the assignor as shall have claimed to be such, with a true statement of their respective claims. The next section authorizes any person interested, as creditor or otherwise, within thirty days after making such report, to file exceptions to any claim of any creditor exhibited in the report, and section 6 is to the effect that at the first term after the expiration of three months, should no exceptions be made to the claim of any creditor or if exceptions have been filed and have been adjudicated and settled by the court, "the said court shall order the assignee or assignees to make, from time to

time, fair and equal dividends (among the creditors) of
the assets in his or their hands, in proportion to their
claims," etc. So far as shown by the abstract of the rec-
ord in this case, no action was taken by the court upon
the report of April 5. No order of approval was entered,
notwithstanding no exceptions were filed to any of the
claims stated in the report, nor was any order of distri-
bution made by the court upon that report. The assignee
took the responsibility of paying the Nichols claim as
preferred, without the approval of his report and with-
out direction from the court to pay it. More than two
years thereafter he came into court asking an order of
distribution and of approval of such payment. We think,
with the Appellate Court, that the mere fact that excep-
tions were not filed to the claim upon the report of April 5,
1895, did not estop appellees from making the objections
in September, 1897, when the judicial power of the court
was invoked to allow the claim as a preference. At the
latter date the estate was unsettled and undistributed
by any order of the court, and having jurisdiction of the
persons interested it could change or set aside any order
previously made. *Hanford Oil Co.* v. *First Nat. Bank*, 126
Ill. 584.

The principal question in the case is whether or not
the fact that Seiter, as trustee of the Nichols fund, had
mingled it with his other moneys, entitled the conserva-
tor of the *cestui que trust* to enforce it as a preferred claim
against the assigned estate. It is admitted by counsel
for appellant in their able argument that the fund is
incapable of identification or distinguishable from the
other assets of the estate, and as said by the Appellate
Court, "so far as can be seen from the evidence it has
been for years mingled and indiscriminately used with
the moneys of the Seiter bank." We said in *Wetherell* v.
*O'Brien*, 140 Ill. 146 (on p. 151): "Where a trustee has con-
verted a trust fund into money and mingled it with his
other moneys, so that it cannot be separated from the

latter, the beneficial owner occupies the position. of a general creditor of the estate, and cannot follow the fund into the hands of an assignee for the benefit of creditors. (*Illinois Trust and Savings Bank of Chicago* v. *Smith*, 21 Blatchf. 275, and cases there cited.) Its identification is a pre-requisite to the exercise of the right to follow it. (2 Story's Eq. Jur. sec. 1259.) While it may not be necessary to point to the particular pieces of money or the particular bank bills that were deposited with the trustee, if the trust property be money, yet there must be a preservation of the distinctness of the trust fund. The means of ascertaining the identity of the fund fails where the money has been mixed and confounded in a general mass of property in the bank of the same description,"— citing authorities. This language was quoted with approval in *Mutual Accident Ass.* v. *Jacobs*, 141 Ill. 261. It was also said in *Bayor* v. *American Trust and Savings Bank*, 157 Ill. 62 (on p. 68): "It has frequently been announced as the law of this State, that even in a case where a definite and actual trust fund, which possesses all the attributes of a separate and distinct identity, has been so mixed and mingled with other funds as to render identification impossible, the *cestui que trust*, in the event of the insolvency of the trustee, is remitted to the position and the rights of a general creditor." See, also, *Trustees of Schools* v. *Kirwin*, 25 Ill. 73; *Otis* v. *Gross*, 96 id. 612; *Union Nat. Bank of Chicago* v. *Goetz*, 138 id. 127.

In *Lanterman* v. *Travous*, 174 Ill. 459, appellants claimed that the proceeds of a certain check became a trust fund in the hands of the insolvent bank and had been mingled with its other money, and that therefore, in equity, an amount equal to the proceeds of the check should be taken from the money of the bank and paid to her. We there said: "It is unnecessary here to consider whether such a doctrine is or is not consistent with the rule established in this State, as announced in many cases,"—citing cases to the effect that when trust money is mixed with

other funds of the trustee its identity as a fund is thereby lost and that the right to pursue it fails, and the foregoing language in *Bayor* v. *American Trust and Savings Bank*, *supra*, was quoted as applicable to the case under consideration.

It is earnestly insisted that what was said in the cases above referred to as announcing the law between general creditors and the assignee in a voluntary assignment proceeding was unnecessary to the decision of those cases, and therefore mere *obiter*. This contention, we think, is unsupported by the facts. It is true that some of the cases could have been decided without reference to that question, but that it fairly arose in each of them for decision is manifest from a consideration of the several contentions made by the parties. Nor do we understand that decisions of this court cited by counsel as announcing a contrary doctrine are in point. They go no further than to hold that as between the trustee and *cestui que trust* the former cannot defend against the claim of the latter to the trust fund because he has wrongfully mingled it with his personal moneys, but that the owner of the trust fund may, in such case, enforce a lien for the same against the entire mass, placing the burthen upon the trustee to distinguish between the different funds. When, however, the trustee is insolvent and his estate has been transferred to an assignee, all of his creditors become interested parties, and, on the authority of the foregoing decisions, where the identity of the trust fund is lost, all creditors, including the owner of the trust fund, must share alike. There is a conflict in the authorities as to whether the assignee in such a proceeding is the representative of the creditors or the mere agent of the assignor; but we think there can be no question but that the creditors of the insolvent, upon filing their claims, become interested in the assigned assets; and this is manifest from the provisions of our statute securing to them the right to object to the claims of each other.

It is also insisted that under the repeated decisions of this court the assignee gets only such title to the property of the insolvent as he had prior to the assignment, and therefore a trust fund does not pass to him. But the very question here is whether or not the trust fund here claimed can be distinguished so that it can be specifically appropriated to the object of the trust, or whether it has been so blended in the mass of the insolvent's property that it cannot be ascertained. It was said in *Kip* v. *Bank of New York,* 10 Johns. 61, (a bankruptcy proceeding): "It is a rule well settled by the authorities cited by the counsel for the plaintiffs, that no estate vests in the assignees of a bankrupt but that of which the bankrupt had the legal and equitable title. Property that he held in trust never passes by the commission, and if that property consists of goods remaining *in specie,* or of notes and other choses in action, the *cestui que trust* is entitled to the property, and not the creditors at large. *The only check to the operation of the rule is when the property is converted into cash by the bankrupt, and has been absorbed in the general mass of the estate so that it cannot be followed or distinguished.* It is the difficulty of tracing the trust money which has no ear-mark that prevents the application of the rule."

Counsel for appellant lay much stress upon what they conceive to be the injustice of permitting a trustee to enlarge his own estate by an appropriation of funds belonging to his *cestuis que trust,* and depriving the latter of the right to pursue the trust fund into a general mass with which it has been confounded, to the extent of enforcing a lien upon the whole mass for the satisfaction of his claim. It must not, however, be forgotten that in cases like this the rights of third parties are involved, and it is upon the ground that they, and not the trustee himself, are entitled to protection that the law as above stated has been announced by this court. As to the decisions of other courts, the most favorable view to ap-

pellant's contention is that they are in conflict. It is enough to say here that in view of our own decisions heretofore rendered, clearly announcing the doctrine adopted by the county and Appellate Courts, we are not now inclined to adopt a different rule.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE PHILLIPS, dissenting.