In re People of the State of Illinois on Relation of Oscar Nelson, Complainant, v. Illiana State Bank, Defendant.
Harvey B. Clem, Appellant, v. Wilbur P. Craig, Appellee.

Gen. No. 8,586.

Heard in this court at the October term, 1931. Opinion filed February 1, 1932.

HUTTON & CLARK and LOUIS J. BREMER, for appellant; H. ERNEST HUTTON, of counsel.

ALFRED A. JOHNSON, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

The Illiana State Bank for about 15 years prior to June 13, 1930, had carried on a banking business in the Village of Illiana, Vermilion county. The president of the Bank was Asbury M. Loring, a farmer. The only employee of the Bank was one Fred R. Bell, who was a director and also performed the duties of cashier, teller, clerk and bookkeeper and was in sole charge thereof. On June 9, 1930, a State bank examiner discovered a shortage in the accounts of the Bank. Bell resigned June 11 and on June 13 the directors resolved to close the Bank and turn it over to the State auditor of public accounts which was done. The auditor appointed Wilbur P. Craig as temporary receiver and, on a bill filed by the auditor, said Craig

was appointed by the court as such receiver on October 11, 1930. On October 27, the receiver, by leave of court, filed his petition making said Asbury M. Loring defendant, to determine the ownership of a certain promissory note dated December 10, 1929, for the principal sum of $5,000 executed by a copartnership called State Line Grain Company and by its partners, V. Current and Faye Current and also by M. A. Current, a relative of the other Currents but not a partner in the Grain Co. In the petition of the receiver it is alleged that said note was delivered by the makers thereof to Bell as cashier of the Bank for a valuable consideration and was kept by said Bell in the vault of the Bank and included among the assets thereof; that on June 11, 1930, Bell delivered the note to A. M. Loring, the defendant in the petition, who still has the note and refuses to deliver it to the receiver; that in the original note the name of Illiana State Bank was the payee but that said name had been interlined and blotted out and the name of said Bell had been substituted and written in as payee and that said Bell had indorsed his name on the back thereof and delivered the same to said Loring who it is charged has no title or interest therein. The prayer of the petition is that said Loring be required to deliver the note to the receiver.

While Frances M. Loring was not made a party defendant to the receiver's petition she joined with A. M. Loring in an answer thereto. In this joint answer of A. M. Loring and Frances M. Loring it is alleged that the money which was a consideration for the note mentioned in the receiver's petition was the proceeds of United States Liberty Bonds which belonged to A. M. and Frances M. Loring and which had been left with said Bell for safe-keeping; that said Bell fraudulently and without any authority whatever from said Lorings and without their knowledge or consent sold said bonds and with the money arising

from the sale thereof loaned $5,000 to the Grain Co., the makers of the note; that afterwards when it became known that said Bell had sold said bonds and when said Lorings had made a demand upon Bell for the return of them or the proceeds thereof, he, the said Bell, delivered to A. M. Loring the note in question and he said that the money arising from the sale of said bonds was the consideration of said note and that the latter really belonged to said Lorings; the answer denied that said note was the property of the Bank and alleged that the only consideration thereof was the proceeds of the sale of said bonds belonging to said Lorings.

Subsequently Harvey B. Clem, appellant, by leave of court, filed his intervening petition in which it is alleged that on August 30, 1929, Clem went to said Bell as the cashier of the Illiana State Bank and asked Bell to purchase United States Government Bonds for him and issued and delivered to Bell two certain checks payable to ''Bank'' one for the sum of $2,002.75 and the other for the sum of $3,006.50; that at the time of the delivery of said checks to Bell appellant had more than $5,100 on deposit in said Bank to the credit of his checking account; that by means of said checks so delivered, said moneys were withdrawn from Clem's account and said Bank and Bell then held the same in trust to purchase such government bonds for appellant, but in violation of said trust said Bank and Bell loaned said money to the State Line Grain Co.; that said money so loaned to the Grain Co. either by credit on overdraft of the Grain Co., by renewal note or as an original note evidencing said loan to them, is evidenced by the note dated December 10, 1929 for the principal sum of $5,000 signed by said Grain Co. and said Currents; that said moneys of appellant so given to the Bank for the purchase of such bonds were not deposited in any general account in the Bank to the credit of appellant but that the same were deliv-

ered as a special deposit to the Bank and to Bell as its cashier for the express purpose and none other, of purchasing such bonds on the market as the agent and representative of appellant and that said funds thereby in law are deemed not to have been mingled with the general moneys and assets of said Bank but are deemed to be a special fund, etc.

Answers and replications were filed by all the parties and the cause was referred to a special master in chancery to take the proofs and report his findings and conclusions on the law and the facts. During the hearing the Grain Co. and the Currents, the makers of the note in question, filed a petition stating in substance that they did not desire to be involved in the litigation between the different claimants of the note and asked leave to deposit the money represented by the note and interest thereon with the circuit clerk with the stipulation that the deposit should stand in lieu of the note until the ownership thereof had been finally determined. The court granted this request and the Grain Co. deposited $5,314.98 with the clerk of the court where said sum now remains awaiting the final determination of its ownership.

The basis of the claim of the Lorings to the note in controversy developed from the following facts: A number of years prior to the execution of the note, the Lorings, who were brother and sister, owned some Liberty Bonds which they gave to Bell for the purpose of delivering them to the county treasurer of Vermilion county as security to the treasurer in making deposits of public funds in the Illiana State Bank. Bell, instead of depositing the bonds with the county treasurer, appropriated the same and converted the proceeds thereof to his own use. When the bank examiner discovered on his examination of the bank in June, 1929, the defalcations of Bell, he drove out to Mr. Loring's residence and notified him of that fact. Loring and the bank examiner then drove to the office

of the county treasurer of Vermilion county to see if these bonds had been deposited there by Bell and discovered that they were not there. On the way back home they met Bell on the public highway while he was driving in an automobile in the opposite direction. They stopped Bell and asked him, in substance, what he had done with the bonds and Bell told them that he had sold them and that he had loaned the proceeds thereof to the Grain Co. and took the note in question out of his pocket, indorsed his name on the back thereof and delivered it to Mr. Loring with the remark that the note really belonged to Mr. Loring. The note at this time was in the following form:

"State Line, Ind., Dec. 10, 1929.

"Ninety days after date, for value received, we, or either of us, promise to pay to the order Fred R. Bell
of The ~~Illiana State Bank~~ of Illiana, Illinois, Five Thousand Dollars at said bank with interest at seven per cent, per annum after maturity.

"And to secure the payment of said amount, each of the undersigned does hereby irrevocably authorize any attorney of any court of record to appear for him in such court at any time hereafter, either in term time or vacation, without process, and to confess judgment in favor of the holder hereof against him alone or against him and one or more of the other makers of this note for such amount as may appear to be unpaid thereon, together with costs and ten per cent of the principal amount as attorney's fees, and to waive and release all errors which may intervene in any such proceedings, and to consent to immediate execution on such judgment.

STATE LINE GRAIN COMPANY.
V. Current,
Faye R. Current,
M. A. Current.
(Indorsed) FRED R. BELL."

The above note was a renewal of an original note executed by the same makers dated October 11, 1929. The bank examiner and Mr. Loring each testified to this conversation with Bell. Mr. Loring and his sister also testified that at another time he told them that the proceeds from the sale of these bonds was the consideration of the note in question. Bell denies that he made such statements. On the hearing, however, it developed that part of these Liberty Bonds were sold by Bell about a year prior to the execution of the note in question and that the balance of the bonds was not sold by Bell until after said original note was executed and the master found that the proceeds from the sale of the Loring bonds were not used in the loan to the Grain Co. The Lorings filed no objections to the master's report in this respect nor made any further attempt to prosecute their claim of ownership of the note and have no further interest in the result of this suit.

The claim of Harvey B. Clem, appellant, as presented by his intervening petition, is the only issue to be considered. On August 30, 1929, Clem went to the Illiana State Bank and requested Bell to buy for him United States Government Bonds of the par value of $5,000 which Bell agreed to do and filled out two checks on the Illiana State Bank which appellant signed and delivered to Bell. These checks are as follows:

"State Line, Ind., Aug. 30, 1929
Illiana State Bank 70–1368
Of Illiana, Illinois
Pay to....Bank..... or order, $3006.50
Three Thousand Six.........50 Dollars
For Bond $3000.00 Aug. 15
Harvey B. Clem."

"State Line, Ind., Aug. 30, 1929.
Illiana State Bank 70–1368

Of Illiana, Illinois
Pay to.... Bank.... or order, $2002.75
Two Thousand Two .......75 Dollars
For Bond $2000.00 Aug. 1st
HARVEY B. CLEM.''

Bell never purchased the bonds. The loan to the Grain Co. was not made until October 11, 1929, nearly two months after Clem delivered these checks to Bell, and the former's claim that his money represented by these checks constituted the loan of the Bank to the Grain Co. is based solely upon the testimony of Bell. At the time of the hearing before the special master, Bell had been indicted, convicted and was under sentence for his embezzlements. The proofs show that the books of the Bank as kept by him are but a mass of fictitious figures and false entries. Depositors' accounts are credited with deposits that were never made and are debited with withdrawals which were never made. It is conceded that on August 30, 1929, Clem had, or should have had, sufficient money to his credit in the Bank to more than cover the amount of the checks but the books show that on August 28, 1929, he only had $325.97 on deposit and that between that time and September 9 which is the next date noted in the account he had withdrawn $20.48 and his balance on that date was $305.49. According to Bell's own testimony he would take the money from the account of one depositor and credit it in the account of another depositor and credit his own account with fictitious deposits so that the books of the Bank represented but a jumbled mass of falsifications. There is no item in the books which can in any way substantiate his testimony that the amount of Clem's checks were used in the loan to the Grain Co. There is nothing in Clem's account with the Bank which can in any way be connected with the withdrawal of these funds from his account and the loan to the Grain Co. The books do not even show that any such amount as represented

by Clem's checks was ever withdrawn from Clem's deposit in the Bank. Clem's pass book, however, does show correct balances of his account with the Bank including the withdrawal therefrom of the amounts represented by the checks given by Clem to the Bank for the purchase of the government bonds for Clem.

The oral testimony of Bell on which appellant bases its claim that the particular funds represented by the two checks made by Clem were used by Bell as the consideration for the note made by the State Line Grain Co. developed in the following manner: The State Line Grain Co. had been a depositor in the Bank for several years and it appears from the evidence that it had been running an overdraft for a long period of time. This overdraft on the 23rd of September, 1929, amounted to more than $6,500. On September 27, 28 days after the date of appellant's checks, there appears on the ledger account of the Grain Co. a deposit of $5,000 which reduced the overdraft of the Grain Co., as shown by this ledger account to $1,077.67. Bell was placed upon the witness stand by the receiver and a number of questions had been asked of him what the $5,000 on the ledger account of the Grain Co. purported to be, whether it was a deposit for cash or for some note or other credit. Bell had answered to a previous question that it was a *cash* deposit by the State Line Grain Co. on that date. Thereafter the following questions and answers then appear in his testimony as follows:

"Q. Did you receive any cash deposit on that date of the State Line Grain Company?

A. Well, only—

Q. State whether you did or not.

A. Well, whatever the records show.

Q. Well, did you or did you not?

A. Well, I don't remember as to that.

Q. The receipt here of $5,000, Mr. Bell, is either a receipt for cash or for some note or other credit?

A. I think it was for a couple of checks, Mr. Clem's checks.''

The last answer of Bell was a voluntary statement of the witness and not responsive to the question. On cross-examination of Bell, the master admitted the following testimony subject to the objection of counsel for the receiver:

''Q. This $5,000 that is reported to be received on this Exhibit 8 was $5,000 of Harvey Clem's money?

A. Yes, sir.

Q. And Harvey Clem, he is one of the petitioners in this case?

A. Yes, sir.

Q. And $5,000 Harvey Clem gave two certain checks to this bank to buy—and to you as representative of the bank—some government liberty bonds for him?

A. Yes, sir.''

It is claimed by counsel for appellant that this testimony of Bell is binding upon the receiver because Bell was a witness produced by the receiver and that it conclusively proves that the particular money to the amount of $5,000 withdrawn from appellant's account was used by the Bank as a credit upon the account of the State Line Grain Co. and represented by the note given by the Grain Co. The original note given by the State Line Grain Co. was dated October 11, 1929. The note in evidence is a renewal note dated December 10, 1929. The credit of $5,000 in the Grain Company's ledger account under the column headed ''Deposits'' is dated September 27, 1929. In the bank's journal under the date of October 12, 1929, a loan of $5,000 is shown to have been made to the Grain Co. The pass book of the Grain Co. does not show any deposit to its account of $5,000 on September 27,

1929, but does show a deposit on October 11, 1929, of $5,000 preceded by the word "Note." The renewal note of the Grain Co. in evidence dated December 10, 1929, shows that the words "Illiana State Bank" were crossed out by a line being drawn through them and above them the words "Fred R. Bell" were written in. Faye R. Current and V. Current who signed the renewal note testified positively that when they signed the original and the renewal notes the name of Fred R. Bell was not written in either one of them. A. M. Loring, Frances Loring and the bank examiner, Glen C. Hodges, each testified that Bell told them that the money represented by the note of the State Line Grain Co. was the proceeds received by him from the embezzlement and sale of the government bonds owned by the Lorings. Bell was impeached in his testimony by the books of the Bank kept by him and by the testimony of the above witnesses and by his own action in indorsing his name on the back of the note and delivering it to Mr. Loring as Mr. Loring's property. The fact that the proofs showed that what he told the bank examiner and the Lorings was false does not lessen the effect of their testimony on the question of the impeachment of his veracity. The burden was upon appellant to prove by a preponderance of the evidence that his funds represented by his checks were used by the Bank, to the extent of $5,000 for the purpose of crediting the account of the State Line Grain Co. with that amount. There is no evidence in the record in support of appellant's contention except the uncorroborated oral testimony of Bell which we hold is unworthy of belief.

The receiver was not bound by this testimony of Bell's nor was the special master in chancery, to whom the case was referred, nor the chancellor, who entered the decree, bound to stultify themselves by giving credence to his testimony under the facts and circumstances appearing in the evidence.

In the case of *Chicago City Ry. Co. v. Gregory,* 221 Ill. 591, the court held: "The law is well settled that a party to a suit cannot impeach a witness voluntarily called by him, *except as that result may be incidentally accomplished by proving a state of facts differing from that sworn to by the witness in question.* Greenleaf on Evidence, sec. 442; *Rockwood v. Poundstone,* 38 Ill. 199; *Griffin v. City of Chicago,* 57 id. 317; *American Hoist and Derrick Co. v. Hall,* 208 id. 597; 10 Ency. of Pl. & Pr. 316." In the case of *People v. O'Gara,* 271 Ill. 138, the court held: "Defendant insists that counsel for the People were improperly allowed to cross-examine and impeach their own witness, Thomas G. Begeska. The State's attorney claimed he was surprised at the witness' answers. The rule is that when a witness unexpectedly gives testimony against the party calling him, such party has the right to examine him and by such examination show that the witness is giving unexpected testimony against the party examining him, and to specifically call the attention of the witness to his former statements for the purpose of refreshing his memory or awakening his conscience and cause him to relent and speak the truth if he was lying. If, however, the witness denies the alleged statements the party calling him must be concluded by his answers, and cannot show, either by the written statement of the witness or by other witnesses, that the witness did, in fact, make those statements, either for the purpose of impeachment or as original evidence of the facts sought to be proved. *He may, however, prove by other witnesses the facts sought to be proved by the witness giving such unexpected testimony.* (*People v. Lukoszus,* 242 Ill. 101; *Chicago City Railway Co. v. Gregory,* 221 id. 591; *American Hoist and Derrick Co. v. Hall,* 208 id. 597.) The court ruled in accordance with the foregoing rules and committed no error in that regard."

There is no evidence that Bell upon the receipt of appellant's checks withdrew the moneys represented thereby from the latter's account and in any way segregated it from any other moneys in the Bank to use exclusively as a credit on the overdrawn account of the Grain Co. in the form of a loan evidenced by the original note of the Grain Co. According to his own testimony Bell shifted debits and credits around in the accounts of the depositors of the Bank in any way that suited his purpose. His testimony as to the use of Clem's money as a consideration for the original note of the Grain Co. was incidentally and completely impeached by substantially every fact and circumstance developed by the evidence. The voluntary, unresponsive statement of Bell in answer to the question asked him on direct examination, hereinabove set out, did not open the doors to appellant to cross-examine him in regard thereto. In any event the receiver was not bound by the testimony given on such cross-examination and when counsel for appellant sought to cross-examine Bell on that subject, appellant made him his own witness and was governed by the rules of evidence in regard to direct examinations. Every question propounded by counsel for appellant on this alleged cross-examination was leading and suggestive and put the answer into the witness' mouth and the answers to each of the questions propounded, being simply the words, ''Yes, sir,'' were incompetent and were admitted by the master subject to objection and should not be considered.

If the testimony of Bell as to the use of the money represented by appellant's checks be disregarded then all that is proven by the evidence in this record is that appellant made the checks payable to ''Bank'' and delivered them to Bell, the cashier of the Illiana State Bank, with the request that he purchase with the funds represented by said checks United States Government Bonds. The purchase was never made and it will be

presumed that the money was mingled with the other moneys in the Bank and used in the course of the Bank's business or was embezzled by Bell. The burden was upon appellant to trace the fund so that it could be identified either as the original property of appellant, as the *cestui que trust* or as a product thereof. *Woodhouse v. Crandall,* 197 Ill. 104. It is not necessary, if the trust be moneys, that the particular coin or kind of money or the individual pieces shall be identified in order to pursue it, but its identity as a fund must be preserved so that it can be distinguished from all other money. So long as it can be followed as a separate and independent fund, distinguishable from any other fund, it can be pursued. *School Trustees v. Kirwin,* 25 Ill. 73. But on the other hand, the mere fact that a trustee has received a trust fund which he has disposed of or dissipated, or mingled it with his other funds and property, so that it is impossible to trace the fund and show where it is, will not enable the *cestui que trust* to establish a lien against the assets of the insolvent estate. *Woodhouse v. Crandall, supra; Union Nat. Bank v. Goetz,* 138 Ill. 127; *Mutual Accident Ass'n v. Jacobs,* 141 Ill. 261; *Estate of Seiter v. Mowe,* 182 Ill. 351. Aside from the evidence of Bell there is no possible way of tracing the fund represented by the checks made by appellant. Moreover, it was held in the case of *Wetherell v. O'Brien,* 140 Ill. 146: "When money, which is delivered to a bank, even though it be for some specified purpose, as, for instance, investment in a mortgage security, has been mingled with the funds of the bank, as was done here, there is no reason why the depositor should be preferred above any other creditor." To the same effect is the case of *Mutual Accident Ass'n v. Jacobs,* 141 Ill. 261. In the case of *Bayor v. American Trust & Savings Bank,* 157 Ill. 62, it was held: "It has frequently been announced as the law of this State, that even in a case where a definite and actual

trust fund, which possesses all the attributes of a separate and distinct identity, has been so mixed and mingled with other funds as to render identification impossible, the *cestui que trust,* in the event of the insolvency of the trustee, is remitted to the position and the rights of a general creditor; and where the relation between the parties is primarily that of debtor and creditor, and there is a mere unperformed agreement on the part of the debtor to create a specific fund which shall possess a separate identity, and to hold the same in trust, it would be illogical and inconsistent with these adjudications to hold that such creditor occupies a stronger position than one who is primarily the beneficiary of a distinct and identified trust fund. We regard the cases of *Trustees of Schools v. Kirwin,* 25 Ill. 73, *Otis v. Gross,* 96 id. 612, *Union Nat. Bank of Chicago v. Goetz,* 138 id. 127, *Wetherell v. O'Brien,* 140 id. 146, and *Mutual Accident Ass'n v. Jacobs,* 141 id. 261, as conclusive against the contentions urged herein by appellant.''

The report of the special master in chancery shows that he made a very thorough and careful examination of the evidence introduced and we fully concur in his findings on the facts. All the exceptions of appellant to this report were overruled. One exception to the report was filed by appellee and that was to a recommendation in the report in regard to the apportionment of the costs. This recommendation was as follows:

''Mr. Clem and Mr. and Miss Loring appear to the Special Master to be innocent parties in this matter, and each of them has been greatly wronged, and inasmuch as Mr. and Miss Loring had possession of the note in controversy, and Mr. Clem had a reasonable ground to believe that he could recover on his claim, the Special Master feels that each of them were justified in prosecuting their respective claims to the

note, and under the rule which prevails in equity, that the costs do not necessarily follow the event of suit, and that costs may be awarded in the discretion of the Chancellor, the Special Master recommends that the Receiver, out of funds in his hands as such Receiver, pay all the costs incurred before the Special Master, that is, that he repay to Harvey B. Clem, his 1–3, and to Mr. and Miss Loring their 1–3 of the total costs in this matter, which amounts have heretofore by these parties been paid to the Special Master.'' The court refused to follow this recommendation but ordered that A. M. Loring and Frances M. Loring jointly pay one-half of the costs of the proceedings and that appellant pay one-half thereof. In this the court was clearly right as it would not be equitable to charge the other creditors of the Bank with the costs and expenses caused by this litigation. The court entered a decree directing that the clerk pay $5,314.98, being the amount of the note of the State Line Grain Co., paid into court by it, to the receiver as the assets of said Bank. The decree might have gone further and have declared appellant to be a general creditor of the Bank in the amount of his claim and entitled to share in the assets of the Bank pro rata with the other general creditors. However, this matter can be adjusted by a future order of the court.

The decree of the circuit court is affirmed.

*Affirmed.*