## CASTNER, CURRAN & BULLITT, Inc., v. SUDDUTH COAL CO.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1922.)

### No. 1975.

1. **Contracts ⊜⇒155—Ambiguities resolved against party by whom contract was drawn.**

    Ambiguities in contract must be resolved against the party by which it was drawn.

2. **Principal and agent ⊜⇒29½—Mine operator's disposal of mining property during term of contract with dealer for sale of its coal held to terminate dealer's contract.**

    Where coal mine operator gave dealer the exclusive agency for the sale of operator's coal for the period of one year by contract dated April 1st, requiring the dealer, in the event of the operator's disposal of its property during the year, "to retire from the representation of the party of the first part [the operator], the date of the severance of business relations to be at the end of the current coal year, to wit, the 31st day of March," the operator's disposal of its property during the year terminated the contract, notwithstanding such provision as to the date of the severance of business relations.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; George W. McClintic, Judge.

Action by the Sudduth Coal Company against Castner, Curran & Bullitt, Inc. Judgment for plaintiff, and defendant brings error. Affirmed.

H. C. Duncan, Jr., of Huntington, W. Va. (T. R. White, of Philadelphia, Pa., and Holt, Duncan & Holt, of Huntington, W. Va., on the brief), for plaintiff in error.

Joseph M. Sanders, of Bluefield, W. Va. (S. D. Stokes, of Williamson, W. Va., and Sanders, Crockett, Fox & Sanders, of Bluefield, W. Va., on the brief), for defendant in error.

Before WOODS and WADDILL, Circuit Judges, and WEBB, District Judge.

WOODS, Circuit Judge. Plaintiff, Sudduth Coal Company, in 1919 and until April, 1920, was operating as lessee coal mines in West Virginia. Defendant, Castner, Curran & Bullitt, Incorporated, conducted a large coal sales agency business, with offices in many cities. On July 7, 1919, plaintiff agreed by parol that defendant should handle and sell all the coal produced by plaintiff for a commission of 15 per cent. This agreement was confirmed by letter of defendant from its New York office, dated July 24, 1919, and plaintiff's reply of July 29, 1919. Defendant's letter contained this provision, assented to in plaintiff's reply:

"It is our understanding that in the event of the above arrangement proving mutually satisfactory, a formal contract will be entered into about January 1, 1920, by both parties, covering the sale of your coal for a period of one or more years."

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The controversy arises out of the following clause of the formal written contract made on April 1, 1920:

"(8) This agreement shall continue in force and effect until the 1st day of April, 1921. It is understood, however, that, in the event of the party of the first part disposing of its property during the life of this contract, the party of the second part agrees to retire from the representation of the party of the first part, the date of severance of business relations to be at the end of the current coal year, to wit, the 31st day of March. In the event of the party of the second part so retiring, it is agreed that the party of the first part shall furnish its due proportion of coal to enable the party of the second part to fill any unexpired or uncompleted contracts made theretofore, if required so to do by the party of the second part."

The contract was signed in duplicate at defendant's New York office, forwarded to its Cincinnati office, and thence transmitted to plaintiff for execution. On March 29, 1920, just before the contract was signed, plaintiff's president, Bailey, told defendant's representative, Raines, in its Cincinnati office, that he was thinking of selling his mine lease. Raines made no objection and asserted no right to object. Letters and telegrams afterwards passed between plaintiff and defendant concerning the contemplated sale and transfer of its lease by plaintiff. While expressing vexation at the business embarrassment which would result, defendant asserted no right to object to the sale. On the contrary, these communications indicate clearly defendant's recognition of plaintiff's right to sell the lease and thereby end its obligation under the contract, except the obligation to furnish its due proportion of coal to enable defendant to fill any unexpired or uncompleted contracts made before the sale if required so to do by defendant. On April 19, 1920, plaintiff agreed to lease its mine to an independent company, and on May 1, 1920, executed a formal contract of lease. Thereafter no coal from the mine was consigned to defendant. Defendant had no "unexpired or uncompleted contracts."

Plaintiff, Sudduth Coal Company, brought this action to recover $37,362.48, alleged to be the net balance in defendant's hands derived from the sale of plaintiff's coal. Defendant pleaded, as set-offs, plaintiff's note for $20,000, and damages for breach by the plaintiff of its alleged obligation under the contract to ship all the coal taken from the mine for the entire period extending from May 1, 1920, to March 31, 1921, set down as $60,000. The note of $20,000 was admitted to be a proper set-off. Upon the evidence above recited the District Court held the defendant was not entitled to damages for plaintiff's failure to ship coal after the sale of its lease, and directed a verdict in favor of the plaintiff for $18,492.32.

[1] We think the District Court properly construed the contract. The argument of defendant is this: The first sentence of paragraph 8 of the contract, above quoted, explicitly provides for the duration of the contract to April 1, 1921; the second sentence of the paragraph, which plaintiff claims gives the right of sale and release from the contract, is self-destructive, because it contains the contradictory provision for continuance of business relations to the end of the current coal year, March 31, 1921. The argument is verbal and technical. The contract was drawn by defendant, and ambiguities must be

resolved against it. Both sentences were evidently intended to have important meaning. That meaning can be ascertained by application of plain rules of construction and common sense.

[2] There were two main purposes of the contract: First, to confer on defendant exclusive agency for the sale of coal for the term of 12 months; second, to confer on plaintiff the right to curtail the term of 12 months in case of sale of the property. Giving the utmost possible significance to the last clause of the sentence, providing for continuance of business relations to March 31, 1921, it could not mean any more than a repetition of the general provision of the first sentence, expressing the first main purpose of the agreement, namely, that the agreement should continue in force until April 1, 1921. It could not import an intention to entirely defeat the second main purpose of the contract expressly provided, namely, that plaintiff might sell the property and end the agency. This construction is plain enough in itself. It is made clearer by the correspondence before the sale, showing defendant's assent to plaintiff's right to end the contract by disposing of the lease.

Affirmed.