D. W. HENSON *v.* F. O. LAMB, *Receiver, et al.*

(Nos. 8643—8656)

Submitted February 9, 1938. Decided November 1, 1938.

*Ritchie, Hill & Thomas, James K. Thomas, Charles Ritchie* and *M. E. Boiarsky,* for appellant.

*A. V. Fitzwater, R. K. Talbott, B. J. Pettigrew, Mohler, Peters & Snyder* and *H. L. Snyder, Jr.,* for appellee.

554

RILEY, JUDGE:

D. W. Henson brought this suit in equity in the Circuit Court of Kanawha County against F. O. Lamb, receiver of the Security Bank & Trust Company, a corporation, and the Metropolitan Life Insurance Company, a corporation, primarily for the purpose of restraining the insurance company from enforcing a deed of trust against plaintiff's property. By an amended and supplemental bill of complaint, plaintiff sought to impress the funds in the hands of said F. O. Lamb, receiver, with a trust in his favor in the amount of $5,034.65. From a decree providing that the funds in the hands of the receiver in the amount of plaintiff's claim were impressed with a trust prior to the claims of general creditors and dismissing the insurance company as a party, the receiver takes this appeal, and the plaintiff cross-assigns as error the action of the circuit court in dismissing the insurance company.

On January 28, 1931, the plaintiff purchased a piece of real estate situated in Kanawha County, West Virginia. He assumed, as a part of the consideration thereof, an indebtedness in the amount of $5,000.00 against the property, secured by a deed of trust originally executed to secure Security Bank & Trust Company, which indebtedness was later assigned to the Metropolitan Life Insurance Company. The deed of trust provided that the first payment of the principal thereon would be due March 1, 1934, the other payments semi-annually on the first day of September and March thereafter up to and including the first day of September, 1945, and the remaining part of the principal sum on March 1, 1946, with interest from date at the rate of six per cent per annum, payable semi-annually on March 1st and September 1st, respectively, ensuing the date thereof.

Plaintiff having sufficient funds, went to the Security Bank & Trust Company on March 23, 1931, for the purpose of paying the total amount of the indebtedness on

the property. The trust company was then, and for some time prior thereto, the duly authorized agent of the insurance company for the collection of interest and payments upon mortgage loans held by the insurance company. Mr. Exline, the trust company's cashier, informed plaintiff that he could not accept the payment of the loan without the additional payment of a cancellation charge for the reason that no payments on the principal were due until March 1, 1934. Be that as it may, Exline, as cashier of the bank, accepted from the plaintiff the sum of $5,034.65. The plaintiff denied that he understood that when he made the payment that the indebtedness was not to be paid off until March 1, 1934. At the time this payment was made Exline delivered to the plaintiff a letter which he did not read until on his way home or the next day. This letter is in the following words and figures, to-wit:

"SECURITY BANK AND TRUST COMPANY

Charleston, W. Va.
March 23, 1931.

Mr. Denver W. Henson,
309 Montrose Drive,
South Charleston, W. Va.

Dear Mr. Henson:

This will acknowledge receipt of your check for $5,034.65 in full payment of principal and accrued interest to date on our loan No. 1750— Metropolitan Loan No. 135245, which has been assigned to the Metropolitan Life Insurance Company. In consideration of this payment by you, we agree to make all payments on interest that mature on this loan until March 1st, 1934, at which time the entire amount will be paid to the Metropolitan Life Insurance Company and their release obtained and sent to you.

Yours very truly,
(Signed) F. M. Exline,
F. M. Exline, Vice-President."

With the deposit of the money by plaintiff, the trust company agreed to make all payments on interest that should mature on the loan until March 1, 1934. Whatever the agreement was, it closed its doors on April 11, 1933, and its affairs passed into the charge of Lamb as receiver of the Commissioner of Banking of the State of West Virginia.

Both plaintiff and the insurance company took depositions, but no depositions were taken by or on behalf of the defendant receiver. The decree complained of provides that the funds in the hands of the receiver should be impressed with a trust in favor of the plaintiff in the amount paid by him, with interest; that the receiver pay out of any funds in his hands as receiver to the plaintiff the sum of $6,168.00, with interest thereon from date of the decree until paid, together with costs incurred by the plaintiff; and further, that the insurance company be dismissed as a party to the cause.

The receiver assigns as error that the trial chancellor based his ruling upon the theory that the payment by plaintiff to the trust company constituted a special deposit which was impressed with a trust in favor of Henson. To oppose this holding, he relies heavily upon *Cambridge Gas Company* v. *Lamb, Receiver,* 117 W. Va. 174, 184 S. E. 566; *Bowne* v. *Lamb, Receiver,* 119 W. Va. 370, 193 S. E. 563; and *Cottrill* v. *First Huntington National Bank et al.,* 119 W. Va. 120, 192 S. E. 131. Clearly, the *Cambridge* and *Bowne* cases are not in point. Both involve the relationship of banker and depositor. In each case, the plaintiff actually exercised the right of withdrawing certain portions of the funds, and interest was paid on the deposit. Readily, they are distinguishable from the instant case, because, in both cases, (1) control of the fund was retained by the depositor; (2) the right of withdrawal was exercised; and (3) interest was paid. Here, the record does not disclose that Henson had any control of the funds which he paid to the trust company. He deposited them for the purpose of paying and discharging a debt which he owed. With the pay-

ment of these funds, the indebtedness due to the insurance company was credited with payment in full. No arrangement was made for the payment of interest directly to plaintiff. At most, the trust company undertook to pay the six per cent interest to the insurance company until the maturity date of the notes. In passing, we suggest our inability to see why the trust company would undertake, if such were its undertaking, to pay six per cent interest on a mere deposit, unless it was in need of funds.

We are unable to discern any application of the *Cottrill* case to the claim against the receiver. In that case, Cottrill owed money represented by a note and secured by a deed of trust on his property. This note was owned by an insurance company, and the Mutual Company, which was for a time the agent for the insurance company, had the agency terminated in 1930. Prior to the termination of the agency, Cottrill had made various deposits in excess of the installments due to the insurance company, in the aggregate amounting to slightly more than $1,600.00, on which he had been periodically paid interest. The Mutual Company became insolvent. In fact, it disappeared as a financial institution, and thereupon, Cottrill attempted to require the insurance company to credit him for the amount paid to the Mutual Company. The attempt in that case was simply an effort on Cottrill's part to hold the insurance company. Certainly, it has no application on the question of the liability of the receiver in the instant case.

The receiver contends that the letter of March 23, 1931, was not a mere receipt, and therefore could not be controverted by oral evidence. The argument is advanced that this letter constitutes a contract which is binding between the parties and is not subject to explanation or contradiction. 5 Wigmore on Evidence (2d Ed.), & Supp., paragraph 2432; Page on Contracts, & Supp., sections 2156, 2157. With this position, we are unable to agree. In the first place, Henson never signed the letter. It bears only the signature of Exline as vice-

president of the trust company. At most, it is an *ex parte* paper prepared and written on behalf of the trust company, and therefore should be construed most strongly against it. In case of doubt, the construction of a written instrument is to be taken most strongly against the party preparing it. *Charlton* v. *Chevrolet Motor Co.,* 115 W. Va. 25, 174 S. E. 570; *Castner, Curran & Bullitt, Inc.,* v. *Sudduth Coal Co.* (W. Va.), 282 Fed. 602; *Epes' Admr.* v. *Hardaway,* 135 Va. 80, 115 S. E. 712; 6 R. C. L., and 3 Id., Per Supp., subject Contracts, sec. 242; *Sunseri et al.* v. *Garcia & Maggini Company et al.,* 298 Pa. 249, 148 Atl. 81, 67 A. L. R. 1428; *Lyman-Richey Sand & Gravel Company* v. *State of Nebraska et al.,* 123 Neb. 674, 243 N. W. 891, 83 A. L. R. 1301; *E. I. Du Pont de Nemours & Co.* v. *Clairborne-Reno Company,* 64 Fed. (2d) 224, 228, 89 A. L. R. 238.

With this rule of construction in mind, a careful examination of this letter discloses that its first sentence would indicate an unconditional receipt for the payment of $5,034.65, in full payment of the indebtedness due to the insurance company. The second part of the letter is contractual in form and recites that in consideration of this payment the bank agrees to make all payments on interest that mature on the loan until March 1, 1934, at which time it would pay to the insurance company the full amount of the loan. The two parts of the letter are contradictory to the fullest extent. At most, the letter is an instrument, ambiguous to a great degree. Under the authorities heretofore cited, it is subject to explanation by extraneous evidence, and a construction most strongly against the receiver, who stands in the place of the trust company.

We are not unmindful that Henson was untrained in the law, and the relations between the parties would naturally prompt him to rely heavily on the trust company's officials. Of course, the construction must be made in the light of the evidence in this case. Greenlee, then an employee of the trust company testified that the money was "credited to the Metropolitan mortgage loan

account on the records of the Security Bank & Trust Company." He further testified: "The $5,000.00 was credited to the principal amount of the Metropolitan Life Insurance Company mortgage loan account and the interest credited to the interest account." Moreover, Exline himself testified: " * * * the money which Mr. Henson paid to the bank was credited to the Metropolitan mortgage loan account and the Metropolitan interest account, those being the two accounts to which all payments on Metropolitan loans were credited." Though called by Henson, Exline is a hostile witness. Plaintiff is not bound by his testimony. Syl. 3, *Culp, Adm'x.* v. *The Virginian Ry. Co.*, 80 W. Va. 98, 92 S. E. 236. Henson testified that when he paid the money to the bank he understood that the indebtedness to the Metropolitan Life Insurance Company was satisfied, but that the insurance company would not give a release deed until after three years. He testified "the money was going right on to them (the insurance company) but they would not take this off their books until three years." Then, again, he testified: "It was my understanding I was paying it to them as the Metropolitan Life Insurance Company's agent, and it was through with." The record discloses that plaintiff relied fully on the trust company as the agent of the insurance company, a reliance which prompted him to pay to it the full amount of the indebtedness which, so he says, embraces his life's savings.

Generally, where money is paid to a bank for a specific purpose, as in the instant case, it may be recovered as a trust deposit if not applied or if misapplied. *Corporation Commission of North Carolina* v. *Merchants' Bank & Trust Company*, 193 N. C. 696, 138 S. E. 22; 1 Morse, Banks & Banking (6th Ed.), sec. 185; *Kimmel* v. *Dickson*, 5 S. D. 221, 58 N. W. 561, 25 L. R. A. 309, 49 Am. St. Rep. 869; *Evans* v. *People's Bank of Meadville*, 222 Mo. App. 990, 6 S. W. (2d) 655; *In re Interborough Consol. Corporation*, 288 Fed. 334, 32 A. L. R. 932, writ of certiorari denied in 262 U. S. 752, 67 L. Ed. 1215, 43 Sup. Ct. 700; *American Surety Co. of N. Y.* v. *Bank of*

*Dawson,* 43 Ga. App. 593, 159 S. E. 736; *Blythe* v. *Kujawa,* 175 Minn. 88, 220 N. W. 168, 60 A. L. R. 330; *Morton* v. *Woolery,* 48 N. D. 1132, 189 N. W. 232, 24 A. L. R. 1107. In the last mentioned case, the court said: "Where money is deposited for a special purpose, as, for instance, in this case, where it was deposited for the stated purpose of meeting certain checks to be thereafter drawn against such deposit, the deposit does not become a general one, but the bank, upon accepting the deposit, becomes bound by the conditions imposed, and, if it fails to apply the money at all, or misapplies it, it can be recovered as a trust deposit." Reference is had to this decision for the many authorities cited therein. Also, see generally, Notes 24 A. L. R. 1111, 39 A. L. R. 1138, 86 A. L. R. 375; 7 Am. Juris., pp. 298, 299. The fund, having been paid to the bank, for the purpose of payment to the insurance company is a special deposit, and, not having been so applied, came into the receiver's hands charged with a trust in plaintiff's favor.

Plaintiff further claims that he is entitled to recover against the receiver on the theory of a trust *ex maleficio.* This theory is advanced upon the assumption that the bank was unauthorized to accept payment of the indebtedness in advance of the maturity date of the note. Clearly, that was the situation. Notwithstanding its lack of authority, however, the bank actually accepted payment in the amount of the indebtedness and by its ambiguous letter of March 23, 1931, in the first sentence thereof, it represented to the plaintiff that the money was received "in full payment of principal and accrued interest to date" of the loan. During the whole course of negotiations between the bank and the plaintiff, the trust company's attitude was not justified in view of plaintiff's reliance upon its express and tacit representations. For instance, notwithstanding plaintiff had paid the money to the trust company, its cashier wrote to the insurance company to the effect that "Mr. Henson has the money to pay this loan in full and would like to do so." And this letter was written notwithstanding the

knowledge of the officials of the trust company that the money had been paid by plaintiff for the purpose of settling a loan. The trust company's officials should have known that plaintiff was being misled as to his position with the insurance company. Nevertheless, neither the strenuous banking times of 1933 nor the approaching insolvency of the bank prompted its officials to disabuse plaintiff's mind. Its actions, unconscionable to say the least, lulled plaintiff into a sense of security to his detriment and its own benefit to the extent, at least, that it had the use of the funds when there was dire need therefor. With it all, plaintiff evidently relied, as he had a right to, upon the trust company. Having paid this money to his detriment and to the trust company's evident benefit, the fund is impressed with a trust *ex maleficio*. *Ream's Drug Store* v. *Bank*, 115 W. Va. 66, 174 S. E. 788; *Carleton Mining & Power Co.* v. *West Virginia Northern R. Co.*, 113 W. Va. 20, 166 S. E. 536; *Keller* v. *Washington*, 83 W. Va. 659, 98 S. E. 880; *Currence* v. *Ward*, 43 W. Va. 367, 27 S. E. 329. Though the funds were commingled with those of the trust company, they do not lose their character as trust funds. Once a trust is created, it cannot be destroyed by the action, wrongful or innocent, of the trustee, except as against the claim of a purchaser for value without notice. *Ream's Drug Store* v. *Bank, supra*. See generally, Notes 32 A. L. R. 950, 82 A. L. R. 46.

The receiver further complains that the decree is erroneous in that it provides, first, for an unconditional payment of plaintiff's claim, in the absence of a finding that either the funds in his hands were sufficient to pay all other trusts of equal dignity or that no other trust existed; and second, in decreeing interest upon the fund without having first ascertained that the funds in the hands of the receiver were sufficient to pay the principal of all preferred and general claims. Generally, trust claims against the receiver of a closed bank share *pro rata* with other claims of the same grade or class. Equality of treatment among all creditors of the same grade

or class is the underlying principle of distribution. 10 Zollman, Banks and Banking, section 6681; *Bates* v. *People ex rel. Nelson*, 265 Ill. App. 1; *Smith* v. *Ringelman*, 79 Colo. 333, 245 P. 706; *Myers* v. *Federal Reserve Bank of Atlanta*, 101 Fla. 407, 134 So. 600; Braver, Liquidation of Financial Institutions, section 425. What claims are outstanding and the funds available to pay them do not appear from the present state of the record. It follows that while plaintiff is entitled to a preference, payment must be deferred until it is determined what funds are available for the satisfaction of his claim and all other claims of the same grade or class. If said funds are insufficient, he must share on a *pro rata* basis with other claimants of the same rank. It likewise follows that the question of whether the claim under scrutiny bears interest should be deferred until final adjudication. See generally, 7 American Juris., subject Banks, section 744; Braver, Liquidation of Financial Institutions, section 812; *State ex rel. McConnell* v. *Park Bank & Trust Company*, 151 Tenn. 195, 268 S. W. 638, 39 A. L. R. 449, note 457; *Ohio Savings Bank & Trust Co.* v. *Willys Corporation*, 8 Fed. (2d) 463, 44 A. L. R. 1162, note 1170; *Leach* v. *Sanborn State Bank*, 210 Iowa 613, 231 N. W. 497, 69 A. L. R. 1206, note 1210; 10 Zollman, Banks and Banking, section 6705.

For the foregoing reasons, we are of the opinion that the funds in the hands of the receiver are impressed with a trust in favor of the plaintiff. This position is necessarily predicated upon the idea that the payment to the trust company was not, in fact, payment to the insurance company. *Board of Sup'rs. of Lunenburg County* v. *Prince Edward-Lunenburg County Bank*, 138 Va. 333, 121 S. E. 903, 37 A. L. R. 604. Therefore, the cross-assignment of error against the insurance company necessarily falls.

We therefore are of opinion to reverse the decree complained of and remand this cause for the entry of a decree not inconsistent with the principles herein set forth.

*Reversed and remanded.*

Fox, Judge, dissenting:

I concur in that part of the opinion which, as I interpret it, holds the plaintiff below to be entitled to a preference in the payment of his claim against the bank, if there be sufficient assets to pay all other preferred claims of the same class; I also concur in the holding that there should not be a final decree on the amount of the said claim until it is first determined that the assets of the bank are sufficient to pay all claims of the class to which that of the plaintiff belongs. I cannot agree that a decision on the question of interest should be postponed. That the defendant bank is insolvent may reasonably be assumed from the closing thereof and the appointment of a receiver to liquidate its assets, and, if insolvent, it necessarily follows that creditors will not be paid in full. The claim made that plaintiff's claim should bear interest from the date of the appointment of the receiver and be paid in full before common creditors are paid, and the denial of that contention by the receiver clearly raises an issue of law which, in the public interest, and in aid of the prompt liquidation of closed banks, should be decided at this time. I entertain the view that, whatever may be the rule applied to preferred claims arising out of voluntary acts, or through the force of a statute, a fund held to be a trust created *ex maleficio* should bear interest and be paid in full before other creditors, common and otherwise preferred, are paid, but inasmuch as a majority of the court is of the opinion that a decision on the question of interest should await further development in the liquidation of the defendant bank, any discussion of the matter on my part at this time, would be premature. The only purpose of this note is to record my view that the question of interest raised on the record and briefs should be decided at this time.