JAQUIEN SCHENK and Another v. E. ALINE DEXTER.

June 12, 1899.

Nos. 11,667—(147).

Loan Agent—Authority to Receive Payment of Mortgage—Possession of Securities.

> An agent authorized to loan money upon coupon notes and mortgage security, which are returned to and retained by the principal, has no implied authority to collect the same, without having lawful possession of such coupon notes and mortgage; and, when he has such possession, he has no implied authority to collect them before due.

Same—Finding not Sustained by Evidence.

> Evidence considered, and *held*, that it did not justify the finding of the trial court that the agents had both express and implied authority to collect and receive payment of certain notes and mortgage.

Action in the district court for Swift county for cancellation and discharge of a mortgage. The case was tried before Powers, J., who found in favor of plaintiffs; and from a judgment entered pursuant to the findings, defendant appealed. Reversed.

*Flannery & Cooke*, for appellant.

*E. T. Young*, for respondents.

BUCK, J.

This action was brought to cancel and discharge of record a mortgage executed and delivered by plaintiffs to the defendant, dated

December 26, 1891. It was given to secure the payment of a promissory note of the same date made by the plaintiffs, whereby they promised to pay defendant, five years after date, the sum of $900, at Philadelphia, Pennsylvania, with interest at the rate of 7 per cent. per annum, payable semiannually, according to the terms of 10 coupon notes attached thereto. The defendant was a resident of Philadelphia, in the state of Pennsylvania, and made the loan through her agents, A. F. & L. E. Kelley, of Minneapolis, Minnesota, who were then, and for a long time prior thereto had been, engaged in loaning money on farm and city property for various parties, and collecting the interest and principal as the coupons and notes matured on loans as made by them. They commenced to loan money for defendant November 15, 1883, and made 13 loans, in all, at different times, for defendant; the last one dated in October, 1895. The business between the parties was carried on by correspondence, which is in evidence, and, when money was sent by defendant to the Kelleys, the latter decided upon the security and made the loans; and all papers, except abstracts of title, were sent to the defendant. As the interest coupons matured, the defendant sent them to the Kelleys for collection, and they made the collections, and remitted the same to the defendant. As the mortgages matured, the Kelleys would send blank releases to defendant, to be by her executed, and returned to them, with the note and mortgage for collection.

The interest coupons on the note and mortgage in question were all paid, up to and including the one due January 1, 1896, and had been collected and remitted by the Kelleys. The coupon due July 1, 1896, was not paid, and on July 2, the cashier of the Citizens' Bank of Appleton, Minnesota, wrote to the Kelleys that if they would send a satisfaction of the loan of Schenk, $900, he would send them a draft for the amount due. On July 3, 1896, the Kelleys answered, saying that such mortgage was not due until December 26 next, but, if he would send a draft at once for $1,001, to cover interest to the 15th instant, they would send for papers, and forward to him as soon as received. On July 6, 1896, the cashier sent the draft, $1,001, and requested satisfaction and all papers, but requested them not to cancel the note, as he might have to fall back on the old mortgage. The draft was not sent to the defendant, Dexter, nor

its proceeds paid her. On September 12, 1896, the Kelleys made an assignment under the insolvent laws of this state. They never wrote Dexter for a satisfaction of the mortgage, and never communicated to Dexter the receipt of the $1,001 draft; and when they received it deposited it, on July 8, 1896, in the Union National Bank of Minneapolis, to their own credit, and it was used by them in the regular course of their business, and none of it was ever received by Dexter; and the Kelleys did not credit it to Dexter until after the Kelleys had made an assignment, and before the mortgage was due.

The trial court found that the Kelleys were the general agents of the defendant, Dexter, for the handling of said loan and other investments, and had full power and authority, both express and implied, to collect both principal and interest, and to hold or transmit such payments to the defendant, and that said mortgage had been paid in full by the plaintiffs to defendant, and ordered the mortgage to be canceled of record, and that the note and coupons be canceled. To sustain this view of the case, the court permitted plaintiffs to show by evidence the manner in which for many years the Kelleys conducted their loan and collecting business, collecting interest and principal for certain other eastern investors, and that by reason of such a long course of dealing the Kelleys must be deemed to have been the general agents of defendant, relating to all her loans in Minnesota. Whether such evidence was competent, we need not determine; for it conclusively appears that defendant never knew of such conduct on the part of the Kelleys, and was not, therefore, bound by it. And in her own business dealings in the loaning of her money by the Kelleys, and the collection thereof, there was but one instance where the Kelleys collected a mortgage before it was due. This was the Morley mortgage, and its payment before due was not authorized by Dexter, and she knew nothing of such fact until it was due, and the Kelleys made this collection without having the note or release in their possession. The fact that they collected the money before due was concealed from defendant by the Kelleys, and they wrote her that it would be paid when due. Nor does it appear that plaintiffs ever knew or relied upon such alleged act of the Kelleys in receiving payment of the Morley mortgage before it was due.

77 M.—2

The business between the Kelleys and Dexter was carried on by correspondence only, and all the information she had in relation to the methods of the Kelleys in conducting her business was that which she received from the letters, and they are all before the court. This evidence is conclusive that the Kelleys never assumed, in such correspondence, to have authority to receive payment of any note belonging to her before it was due, or before receiving a satisfaction of the mortgage. When each of the 13 loans was made by the Kelleys for defendant, the note and mortgage were sent to defendant, and in every instance retained by her until due; and, so far as she knew, the Kelleys never collected or attempted to collect a mortgage before it was due and a release sent. The Kelleys had no authority to assume and declare the principal of this mortgage to be due on default in the payment of one or more coupons. And payment to them of the interest and entire principal in such case, without the possession of the note and mortgage, was unauthorized, and the plaintiffs made such payment at their peril and own risk. Trull v. Hammond, 71 Minn. 172, 73 N. W. 642. Or, if the Citizens' Bank of Appleton paid the draft of $1,001 for itself or plaintiffs, the same rule would apply. The dealings between the bank and the Kelleys cannot be charged up to the defendant. They knew that the principal of the note and mortgage was not due for six months at the time when they received the $1,001 draft. If the bank was guilty of negligence in dealing with the Kelleys, that is a matter to be settled between it and plaintiffs, not to be made a cause of action against defendant upon an unauthorized act of one claiming to be her agent as to this particular act. The bank or plaintiffs should have acted more prudently, and obtained a release of the mortgage before paying it, as there does not appear to have been sufficient ground for their doing it safely without such release or satisfaction.

It is claimed, however, that there was express authority for the Kelleys to receive payment of this mortgage, and this contention rests principally upon two letters written by the husband of defendant to the Kelleys. The first one was dated June 22, 1894, and in it he states:

"Manage all in the future as you have in the past regarding loans, as you think for the best. I have no disposition to question anything you do in the matter, for I know it is the best."

And under date of February 19, 1895, he again wrote:

"Manage all matters as you think best regarding our investments, and be sure of the commendation of very truly yours, E. M. Dexter."

There is no warrant in this language to justify the Kelleys in violating their authority, or the law as to their rights as mere agents, in making collections before the debt was due. They had never previous to this time done so,—at least, not to the knowledge of defendant,—nor made collections without the possession of the coupons as evidence of their right to collect. Their past conduct had been all right, as to Dexter, and in the light afforded by that conduct were the letters written. They were authorized to manage matters as they thought best regarding investments, based upon their past acts; and, in every instance where a note was to be paid, the Kelleys had notified defendant of the fact, and sent defendant a release, to be executed by her and returned before payment. Not only this, but the Kelleys did not assume, in their letters to the bank, any authority to collect the mortgage in question without a release from Dexter; for under date of July 3, 1896, they wrote the cashier that the mortgage was not due until December 26 next, and they would send for papers, and forward them as soon as received, if the cashier would send the draft. This letter of the Kelleys fairly conveyed to the bank or its cashier the information that it was necessary for the Kelleys to send to defendant for the papers (that is, the mortgage, note, and satisfaction or release) before they could do anything further, as they did not claim to have possession of the papers, or authority to release the mortgage. The cashier knew this, and, if it was not negligence on his part in sending the draft, it was a serious mistake, for which the defendant is not liable, Not only this, but the cashier does not claim that he knew of any express or implied authority on the part of the Kelleys to secure payment without the possession of the papers; and he knew that they did not have them, for the Kelleys had so informed him.

Plaintiffs do not claim, or show by evidence, that they knew anything about the Kelleys' and defendant's method of making loans, or that they relied upon such method when the draft of $1,001 was sent to the Kelleys.

We are therefore of the opinion that the evidence completely fails to show either express or implied authority on the part of the Kelleys to recover either interest or principal, or that the mortgage in question has been paid.

Judgment reversed.