# CHARLESTON.

## Roberts v. Tavenner *et al.*

### Decided December 21, 1900.

1. **Equity—*Innocent Persons.***

   When one of two innocent persons—that is, persons each guiltless of an intentional moral wrong—must suffer loss, it must be borne by that one of them who, by his conduct, acts, or omissions, has rendered the injury possible. (p. 638.)

2. **Holder—*Transferror—Notice—Fraud—Consideration.***

   In order that the holder may stand upon a better footing than his transferror, he must acquire the instrument without notice of fraud, defect of title, illegality of consideration or other fact which impeaches its validity in his transferror's hands. (p. 638).

3. **Negotiable Note—*Borrower—Endorsee—Equity.***

   Where a party, through his agent, loans money to a third party, and said agent takes from the borrower a negotiable note payable to his own order, but pays no part of the consideration therefor, and the party loaning the money looks after the deed of trust by which the note is secured, and has the same recorded, and then said agent indorses said note to the party lending the money, who has full knowledge of the transaction, such indorsee cannot be regarded as a holder for value, and protected against equities arising between the maker of said note and said agent. (p. 639).

Appeal from Circuit Court, Wood County.

Bill by J. W. Roberts against Elizabeth B. Tavenner and others. Judgment for plaintiff, and defendants appeal.

*Reversed.*

McCleur & McCleur, for appellants.

F. P. Moats and Van Winkle & Ambler, for appellee.

English, Judge:

On the 8th day of September, 1893, Elizabeth B. Tavenner borrowed from the Parkersburg Land & Loan Co., through H. G. Cole its agent and general manager the sum of three hundred and sixty dollars, and executed a note therefor to said company which reads as follows:—

"$360.        Parkersburg, W. Va., September 8th, 1893.

One year after date I promise to pay to the order of Parkersburg Land & Loan Company, three hundred and sixty dollars. This note secured by deed of trust on the following described property: Lot No. 4 of the home place of Thomas J. Tavenner deceased, containing eight acres. Value received, negotiable and payable at the Second National Bank of Parkersburg.

ELIZABETH B. TAVENNER."

"Endorsed                    771 35

ELIZABETH B. TAVENNER,
    September 11.          $360.

Parkersburg Land & Loan Co., per H. G. Cole, Manager. Demand notice and protest waived.

PARKERSBURG LAND & LOAN CO.,

Per H. G. COLE, Manager."

To secure this note Miss Tavenner executed and delivered a deed of trust on said real estate, thinking she was dealing solely with said land and loan company through its agent and general manager Cole, but has since learned that said money was really loaned by J. W. Roberts through said company, Cole merely acting as his agent in the transaction. Roberts in pursuance of his arrangement with Cole as agent of said company, gave his individual check to said company for a few cents less than the amount of said note, and received the note in return. On January 10, 1895, Miss Tavenner paid Cole one hundred dollars having previously paid the interest to the end of the year, and executed her note for two hundred and seventy-seven dollars dated January 11, 1895, for balance due on said original note, being utterly ignorant of the fact that Roberts held said original note. Cole, at that time told her that said three hundred and sixty dollar note was misplaced, but gave her a receipt which stated that on payment of the note for two hundred and seventy-seven dollars, the three hundred and sixty dollar note would be delivered to her.

Miss Tavenner afterwards borrowed of the Homestead B. & L. Association seven hundred dollars, and out of the amount so

borrowed, three hundred and sixty-five dollars was paid to Cole as agent and manager of said land and loan company, but when so paid neither said two hundred and seventy-seven dollar note nor three hundred and sixty dollar note was surrendered to her, although the trust deed by which it was secured was released and the release recorded.

On August 21, 1895, Roberts says Cole told him that Miss Tavenner had paid him three hundred and sixty-five dollars and the interest, and asked Roberts not to give him any trouble about it. With the full knowledge that Cole had received this money, and that Miss Tavenner had no notice whatever that he was the holder of the note, Roberts remained silent, and went off on a pleasure trip to Atlantic City. On the 14th of September, 1895, Cole, having been indicted and given bond for his appearance, left the State. The effects of said land and loan company were sold at auction, and it was ascertained that Cole had been guilty of several fraudulent transactions. After waiting more than a year after said note fell due, and four days after Cole had absconded, Roberts informed Miss Tavenner that he was the holder of said note for three hundred and sixty dollars, which was the first intimation she had that this note was in the hands of any other than said land and loan company.

On the first Monday in October, 1895, Roberts filed his bill in the circuit court of Wood County against Elizabeth B. Tavenner praying for the enforcement of said deed of trust executed by her to secure said note for three hundred and sixty dollars to the land and loan company claiming to be the owner of the note thereby secured, and asking for the cancellation of the release of said trust lien executed by said land and loan company.

The defendant filed her answer to the plaintiffs bill detailing substantially the facts above stated, and alleging that after said deed of trust was released she supposed the entire matter was settled, and knew no better until she received notice from the bank that said two hundred and seventy-seven dollar note would be due on the 13th of July, 1895; that at the time the three hundred and sixty dollar note fell due in September, 1894, she paid H. G. Cole one hundred dollars cash and executed her note for two hundred and seventy-seven dollars for the remainder of the three hundred and sixty dollar note; that Cole then stated to her that he could not put his hands on the old note, but that it was of no account anyway, that the two hundred and seventy-seven

dollar note took its place, and he gave her a receipt dated in January, 1895, which reads as follows: "Received of Miss Elizabeth B. Tavenner one note for two hundred and seventy-seven dollars dated January 11, 1895, and payable in six months from date; the same is secured by one three hundred and sixty-five dollar note which note is past due and held by us, and when the said two hundred and seventy-seven dollars is due we hereby agree to deliver the same to her as a credit on the three hundred and sixty-five dollar note." Signed by the Parkersburg Land & Loan Company, per H. G. Cole, manager; that she never gave but one note to said company besides the two hundred and seventy-seven dollar note, and she thought that was for three hundred and sixty-five dollars, while it was for three hundred and sixty dollars; that although this note was due September 8, 1894, she received no notice from the bank, or from any one that any such note was held against her, nor was it claimed by the plaintiff or any one else until long after the arrest of Cole, and after he had become notoriously bankrupt, and had fled the State; and she prays that the plaintiff's bill be dismissed as to her, and should the court hold that Roberts is entitled to any relief, she prays by way of affirmative relief against the Homestead B. & L. Association for the said amount and costs.

The plaintiff Roberts filed a special replication; the Homestead B. & L. Association filed its answer, and the cause was submitted to W. N. Miller as special judge.

The defendant also filed an amended answer in which, among other things, she claims that it was no fault of hers that said notes were not taken up, that before the said B. & L. Association would pay over the seven hundred dollars they had agreed to loan her, it undertook to clear the title to the land by the payment of the amount secured by said deed of trust, and instead of lifting the said note, it gave the money to Cole, and turned over to her the difference between the said note and the amount the said association charged her for fees, dues, etc., and the seven hundred dollars, which amounted to about three hundred dollars.

Depositions were taken, and the cause submitted on January 5, 1900, the court holding that the plaintiff was entitled to the relief prayed for, and that the defendant Elizabeth Tavenner was not entitled to the relief prayed for against the Homestead B. & L. Association, and decreed that she pay the plaintiff the sum of three hundred and sixty dollars with interest thereon

from September 8, 1894, amounting to date of decree to four hundred and seventy-four dollars and eighty-four cents; that the release of said deed of trust be cancelled and set aside; that said deed of trust is owned by the plaintiff Roberts and is a valid lien on the real estate therein described; that the deed of trust in favor of said B. & L. Association is also a valid lien on said estate next in priority to said lien of plaintiff, and referred the cause to a commissioner to ascertain the amount due said B. & L. Association. From this decree the defendant obtained this appeal.

The first error assigned and relied on is claimed to be as to the action of the court in decreeing that the plaintiff was entitled to the relief prayed for, and decreeing the sale of her property to pay the debt of four hundred and seventy-four dollars and eighty-four cents being the three hundred and sixty dollar note with interest from September 18, 1894.

The record discloses that this loan to Miss Tavenner was not made by the land and loan company, but by J. Roberts, said company being merely the conduit by which the three hundred and sixty dollars passed from the hands of Roberts to the hands of Miss Tavenner, and although the note was made payable to the company, it never paid one penny's consideration for it, but the entire consideration passed from Roberts, and the debt was his in equity without assignment. The plaintiff alleges that the money borrowed by Miss Tavenner for which said deed of trust was given was his, and was advanced by him for this purpose, and the note taken for said loan never was the property of said land and loan company. It was transferred at once to the party entitled to it, who had paid the consideration for it to the maker.

Counsel for the appellee claims that " a negotiable note in the hands of a payee carries with it the warranty by the maker that it was executed for value and regularly delivered and binds the maker to pay the amount stipulated at maturity or afterwards to the holder for value acquired before maturity without notice." Citing numerous authorities, but this proposition needs no authority to support it.

This case, however, in my opinion stands on a different footing. The loan company received no consideration, from Roberts for this note; he loaned the money and the note and deed of trust by which it was secured were his from the date of their execution, and for that reason he was not an innocent purchaser

thereof for value from said company. The note was placed in bank by Roberts and demand, protest and notice waived by said company acting by H. G. Cole manager, so that Miss Tavenner was deprived of that means of knowing where her note was. When the note matured Roberts withdrew it from the bank but gave the maker no notice. Cole received the interest from her, and when she wished to pay the note, he pretended to have it still, but had misplaced it, but took the money for it.

The plaintiff Roberts was not ignorant of the fact that Cole as agent of said company had received the money; he states in his deposition that Cole told him on August 21, 1895, that Miss Tavenner had paid the money and interest, and asked him not to give him any trouble, but even then Roberts gave Miss Tavenner no notice that he held her note, or she might have resorted to Cole or the company he represented; she was allowed to remain in ignorance of the whereabouts of her note until after the 14th of September, when Cole absconded and his company was sold out. Roberts by placing his money in Cole's hands to loan out for him and take security for it, made him or his company his agent; and when he is made aware of the fact that this young lady, in her utter ignorance of business transactions, has repaid the money to the agent from whom she received it, remains silent, and allows her no opportunity to protect herself by recovering it from this fraudulent agent. The trust lien on her property had been released by the party in whose favor it had been executed, and she knew nothing of the transfer of the note.

The plaintiff states that about September 18, 1895, he ascertained his trust had been released, and he thought it proper to see Miss Tavenner in regard to the matter as soon as possible, but he did not think proper to let her know in August, 1895, that she had paid her money to this dishonest agent who had no authority to receive it.

Roberts in his deposition says that Cole was not acting as his agent in this transaction; that "he bought paper from him the same as a bank," but in another place he says: "About the 1st of September, 1893, Mr. Cole came to me and asked me if I had some money that I could let Miss Tavenner have, and I asked him what amount she wanted. He said she wanted three hundred and sixty dollars and would give good security and give a deed of trust on land across the Kanawha." He directed Cole to have the title examined, etc., and afterwards Cole brought him

this note; which looks very much as if Cole was his agent in loaning this money and taking security for its payment. By making Cole his agent in this way he put it in his power to rob this unsuspecting young woman, and when he could have saved her to some extent by giving her notice that Cole had received her money without authority, he remained silent.

In Vol. 1 A. & E. Enc. of Law, (New Ed.) 1206, the law is thus stated: "When usages of trade require it, or when delay might mislead the agent or other parties, upon notice from the agent informing his principal of his transaction it is the duty of the latter to repudiate promptly the act if he wishes to avoid liability." See also 2 Pom. Equity Juris. s. 803: "When one of two innocent persons, that is, persons each guiltless of an intentional wrong, must suffer loss, it must be borne by that one of them who by his conduct, acts or omissions has rendered the injury possible."

In *Chandler* v. *Coe,* 54 N. H. 561 it was held that "an undisclosed principal is liable to be sued and entitled to sue upon an express verbal contract, and also upon a simple written contract not under seal, but not upon a negotiable instrument made by his agent for him in the agents name."

Now if Roberts was the purchaser of this paper for value in the open market as he claims, I would not hesitate to say he would be protected from any equities arising between said Cole as agent for said company and Miss Tavenner. The facts disclosed however, place Roberts in a different position, and deprive him of the protection afforded to *bona fide* purchasers for value of negotiable instruments. Miss Tavenner was kept in ignorance of the fact that this money was loaned to her by Roberts. He looked after the security himself and said he had the deed of trust recorded. When told by Cole that Miss Tavenner had paid the note to him, he replied that he did not look to Cole for the amount at all, but held the note and deed of trust, and had never relied on him for the amount; showing clearly that Cole was merely his agent in making the loan; in other words that he, Roberts, had made the loan himself, through his agent. It is clear that the land and loan company paid nothing for this note, and that Roberts knew it when it was endorsed to him.

Daniels on Nego. Inst., s. 789, vol. 1, says: "In order to stand upon a better footing than his transferrer, the holder must acquire the instrument without notice of fraud, defect of title,

illegality of consideration, or other fact which impeaches its validity in his transferers hands; and the word notice in this connection signifies the same as knowledge."

After this note fell due, it was held by Roberts for a year without notice or demand for payment until Cole and his company became worthless, and as soon as he learned the money had been paid to Cole, placed the claim in the hands of an attorney for collection, and is seeking to have the maker of the note pay it a second time, which a court of equity under the circumstances will not permit him to do.

The money paid by the Homestead B. & L. Company to Cole, having been paid to him by the direction of Miss Tavenner, said company is not liable to repay the same to her. The decree must be reversed and the bill dismissed.

*Reversed.*

BRANNON, JUDGE:

I dissent. Roberts was holder for value, and Cole not his agent for collection.