CARRIE M. KNOPF, APPELLEE, V. EDWIN E. PERKINS ET AL., APPELLANTS.

FILED JUNE 12, 1934. No. 28838.

*Charles E. Bruckman* and *L. S. Dunmire,* for appellants.

*Stiner & Boslaugh* and *Edmund P. Nuss, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and THOMSEN, District Judge.

ROSE, J.

This is a suit to foreclose a 10,000-dollar mortgage to the extent of $2,100 on lots 16 and 17, block 24, city of Hastings. The mortgage was executed September 22, 1927, by defendants, Edwin E. Perkins, Kizzie Perkins, David M. Perkins and Kittie M. Perkins, mortgagors, to secure several negotiable notes aggregating $10,000, maturing September 22, 1932. The notes were payable to the order of Ernest Hoeppner at the office of Hoeppner

& Uerling, and Hoeppner was named in the mortgage as mortgagee. The notes were sold to different persons. By mesne assignments plaintiff became the owner and holder of a 2,100-dollar note in the series. September 22, 1930, defendants paid Hoeppner & Uerling, the loan brokers, $10,300, the sum of the entire principal debt and unpaid interest. The loan brokers paid each bondholder his due with the exception of plaintiff who received nothing. Her portion of the payment or the sum of $2,100 was appropriated by the loan brokers to their own use. They went into the hands of a receiver March 2, 1932. Plaintiff brought this suit to enforce payment of her note by foreclosure of the mortgage securing it.

Mortgagors, defendants, pleaded payment in full to Hoeppner & Uerling at their office September 22, 1930, without notice or knowledge that any one else owned any of the notes, and alleged that payment was so made with the promise of Hoeppner & Uerling to cause the mortgage to be satisfied of record, and that Hoeppner & Uerling were either owners and holders of the notes or were acting as agents for the owners and holders with power to collect both principal and interest.

Upon a trial of the cause the district court found that Hoeppner & Uerling received from mortgagors for plaintiff $2,100 and misappropriated the same and were at the time agents for both plaintiff and mortgagors; that the loss occasioned by the misappropriation of $2,100 should fall equally on creditor and debtors. Mortgagors were ordered to pay plaintiff $1,135 within 90 days and upon failure to do so foreclosure was ordered. Mortgagors appealed, insisting on satisfaction of the mortgage, and plaintiff took a cross-appeal, contending for payment of her 2,100-dollar note in full with interest and for an order of foreclosure in the event of default.

The principal question presented by the record is raised by the issue as to the agency of Hoeppner & Uerling to receive for plaintiff payment of the principal debt evidenced by her note which was negotiable and transferable

by indorsement and delivery. When the makers and mortgagors put $10,300 in the hands of the loan brokers, or mortgagee, to pay their entire loan, plaintiff's note by its own terms had not yet matured and was not in their possession. The exercise of an option to make payment at that time was necessary. Under the circumstances the burden was on the makers and mortgagors to prove authority of Hoeppner & Uerling to receive payment. *Davis v. Polak,* 126 Neb. 640. In the case cited it was held:

"Ordinarily, no duty rests upon the indorsee or holder of a negotiable note or bond to notify the maker of such ownership; but the duty is upon the maker to seek out the holder of such instrument when making payment."

There was no direct proof of agency for the purpose of receiving payment. It is true that both principal and interest were payable at the office of Hoeppner & Uerling, but this did not prove they were agents of plaintiff. Interest coupons were attached to plaintiff's note. She kept all of them in her possession and did not surrender any unpaid coupon or the unpaid note. To the debtors the loan brokers gave notice in advance when an instalment of interest on the principal debt of $10,000 would become due and interest thereon was paid promptly to them at their office, but the evidence does not show that plaintiff had knowledge of such notices. Interest coupons were not surrendered when paid by mortgagors to Hoeppner & Uerling but were returned to the debtors at a later date. When an interest coupon attached to plaintiff's note matured she detached it, took it to the office of Hoeppner & Uerling, received payment and surrendered it. She would naturally go there for her interest, because it was payable there according to the terms of the contract. To her it was immaterial whether interest was paid personally by the debtors or by some one for them. In the answer to the petition it was alleged that payment was made to Hoeppner & Uerling under their promise to cause the mortgage to be satisfied of record and that they

were either owners of the notes or agents of the owners with power to collect both principal and interest. Edwin E. Perkins, one of the makers of the notes and a mortgagor, according to his own testimony, told Uerling that he had left a check for $10,300 with a girl in the office and would like to have the abstract brought down to date and the mortgage released, assuming it was there. This mortgagor in making the payment did not demand the note; did not ask for the mortgage; did not inquire if Hoeppner & Uerling still owned the paper; knew the notes were negotiable and transferable by indorsement. It seems clear from the evidence and surrounding circumstances that mortgagors made Hoeppner & Uerling their agents to pay their debts to the creditors and to procure the satisfaction of the mortgage. Mortgagors themselves incautiously furnished the means and the opportunity for the embezzlement. Plaintiff did nothing to lead them into believing that Hoeppner & Uerling were her agents with authority to receive for her payment of the principal debt evidenced by her note. If mortgagors had exercised the same caution and business judgment in making payments and had refused to part with their money until the notes were surrendered according to law and business usage, there would have been no loss as the result of embezzlement which occurred after Hoeppner's death in June, 1930. The loss should fall on mortgagors, according to the better view of the evidence and the following rule of equity:

"Where one of two parties to transactions must suffer a loss through the misconduct or the wrongs of a third person, the superior equities will be determined from all of the material circumstances, and the burden will be allowed to fall where equity and justice place it." *Omaha Elevator Co. v. Chicago, B. & Q. R. Co.*, 104 Neb. 566.

The judgment is reversed and the cause remanded to the district court, with directions to enter a decree of foreclosure in favor of plaintiff for the full amount of her claim, including the interest provided by the contract.

REVERSED.