KANSAS CITY LIFE INSURANCE COMPANY, APPELLEE, V. CHARLES NEVERVE ET AL., APPELLEES: COSMOPOLITAN OLD LINE LIFE INSURANCE COMPANY, APPELLANT.

274 N. W. 390

FILED JUNE 18, 1937. No. 29914.

*Robert G. Simmons,* for appellant.

*Kennedy, Holland, De Lacy & Svoboda, E. H. Evans, Urban Simon, Cordeal, Colfer & Russell* and *M. M. Maupin,* contra.

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

DAY, J.

This suit had its inception as one to foreclose a real

estate mortgage brought by the Kansas City Life Insurance Company against the Neverves, owners and mortgagors of the real estate. The Cowles-White Lumber Company brought a separate suit to foreclose a mechanic's lien on the same real estate, and numerous others filed cross-petitions seeking foreclosure of mechanics' liens. These suits were consolidated, and all parties tried their issues in one trial. In addition to these parties, the Cosmopolitan Old Line Life Insurance Company filed a cross-petition, the object of which was the foreclosure of a mortgage on the same land and to have it adjudicated a lien prior to all others. Briefly, the court found that the Kansas City Life Insurance Company was entitled to a foreclosure of its mortgage as a first lien; that the various mechanics' liens were next in priority; and that the mortgage of the Cosmopolitan Old Line Life Insurance Company was null and void. The appeal to this court is prosecuted by the Cosmopolitan Old Line Life Insurance Company. The issue presented by this appeal is the determination of the rights of the Kansas City company under its mortgage and the Cosmopolitan company under its two mortgages on the same property. Neither the mechanics' lienors nor the owners of the fee are complaining here about the judgment of the trial court.

The factual situation is not as complicated as it would appear. The two brothers, Charles and Grotsie Neverve, own a tract of land consisting of about 960 acres as tenants in common which they mortgaged to the Federal Trust Company on the 26th of February, 1929, to secure their notes of the principal sum of $14,000. The Federal Trust Company sold these notes and assigned the security to the Kansas City company on May 25, 1929, and the assignment of the mortgage was recorded soon thereafter. It is not questioned that the Kansas City company secured a first lien on the land as security.

The defendants Neverve were unable to make the payments of principal, interest, and taxes promptly as stipulated in the contract. They had not paid the taxes for 1929

and subsequent years, and these were paid by the Kansas City company. The Neverves made payments to the company upon occasion. There are, however, two substantial credits on the account, one in 1931, and the other in 1933, as the result of the payment by a fire insurance company of losses resulting from the burning of two of the houses upon the land. The fire insurance was payable to the mortgagee.

But it fairly appears from the record that the Kansas City company was not satisfied with this mortgage as an investment and that as early as April 3, 1931, complained about its delinquency and, on September 16 of the same year, suggested that the Neverves refinance their loan and pay their existing mortgage. There is a series of letters between the Kansas City company and the Federal Trust Company concerning this loan, with the former continually complaining about the manner in which the payments were made. The Federal Trust Company continued to service this loan until April 24, 1933.

The Federal Trust Company, as suggested by the Kansas City company, attempted to refinance this loan as early as August, 1932. From this effort to refinance arises the dispute in this case. The Neverves wished to divide this land among themselves and executed deeds to each other to accomplish this purpose. They each made application to the Federal Trust Company for a loan on their respective tracts, the total of which they hoped would be sufficient to pay all liens against the land. They executed notes and mortgages for this amount to the Federal Trust Company who in turn sold the notes and the mortgage security to the Cosmopolitan company. The Cosmopolitan company paid the Federal Trust Company for the notes and mortgage. The Cosmopolitan company was to have a first mortgage on the land, and it required the payment of all existing liens. At the time of the transaction it was thought that the sum was sufficient to pay the mortgage and all the mechanics' liens against the land. The abstract had not been extended and delivered to the Cosmopolitan company

showing that it held a first lien. In fact, the new deal was not considered completed. The Federal Trust Company realized this and placed the money in a trust fund account in the bank and proceeded to complete the deal. The transaction was never completed, and the Federal Trust Company was never able to furnish the Cosmopolitan company with an abstract of title and a first lien upon the property. It became apparent that the amount of the new loan was insufficient to pay the old mortgage and the mechanics' liens against the property. It therefore became the duty of the Federal Trust Company under its contractual relation with the Cosmopolitan company to return the money paid for the purchase of the new security. Not only did the contractual relation impose this duty fairly interpreted, but the parties by a long course of action so interpreted it. During a considerable period of time, according to an officer of the Federal Trust Company, numerous transactions had been handled in exactly this manner. The Cosmopolitan company expected it in this case. The Federal Trust Company deposited the money received from the Cosmopolitan company in a special account. It was not to be remitted to the Kansas City company until such a time as the property had been cleared of liens and the new mortgage became a first lien in favor of the Cosmopolitan company. It never became such a lien. It could not become such a lien, because it was expected that the money realized from the sale of such security would pay and discharge all other liens. When the amount of all the liens was ascertained, it was found to exceed the amount produced by the new loan. Under the contract as construed by the parties, the Cosmopolitan company could not acquire a first lien and was entitled to a refund of its money by the Federal Trust Company.

In the meantime, the Federal Trust Company became financially involved and used the money for another purpose than the payment of the first mortgage of the Kansas City company and other liens. The cause of this controversy was due to the fact that the Federal Trust Company

at the time it was adjudged insolvent did not have this money in its accounts.

It is the contention of the Cosmopolitan Old Line Life Insurance Company that when the Neverves gave a new mortgage to the Federal Trust Company, which was sold to it and the purchase price paid, it constituted payment to the Kansas City Life Insurance Company. This argument is grounded upon the proposition that the Federal Trust Company was the agent of the Kansas City company. The contract and the course of dealing between the two are said to evidence the nature of the relation between the two corporations.

The mortgage of the Kansas City company was originally given to the Federal Trust Company by the Neverves. It was then sold to the insurance company. The mortgage and note contained provisions that "both principal and interest payable at the office of Federal Trust Company in Lincoln, Nebr." This arrangement was never changed or varied until April 24, 1933, some time after the occurrences which are material to this suit. The Federal Trust Company serviced the loan and acted as agent for the Kansas City company. The appellant insists that we conclude that the circumstances related was a payment of the money due on the notes and that the mortgage became void which the Kansas City company seeks to foreclose. Numerous cases are cited in support of the old, well-established rule in this jurisdiction, announced in *Harrison Nat. Bank v. Austin,* 65 Neb. 632, 91 N. W. 540: "Where one has placed his agent for the investment of money in notes and mortgages in such a situation that persons of ordinary prudence, acquainted with business usages, would be justified in regarding such agent as having full authority with reference to the extension, collection, etc., of such notes and mortgages, payment to such agent will be deemed payment to the principal."

But the rule is scarcely applicable to this case, for the reason that the Cosmopolitan company did not intend to pay this mortgage except for the purpose of making its

mortgage a first lien. In the application for the new loan which was sold to the Cosmopolitan, the Neverves designated the Federal Trust Company as their agent for the purpose of refinancing. The Federal Trust Company was, it seems, in many respects the agent of all parties involved. There is only one possible distinction in the facts between the Cosmopolitan company and the Kansas City company. The former did not part with coupon notes until they were paid, while the latter sometimes sent the notes to the Federal Trust Company for collection. But they had not sent the principal coupon notes in the instant case to them for collection.

There is another well-established rule applicable to the facts presented here that, where one of two parties to a transaction must suffer loss through the misconduct of a third person, the burden will be allowed to fall where equity and justice require. *Omaha Elevator Co. v. Chicago, B. & Q. R. Co.*, 104 Neb. 566, 178 N. W. 211; *Knopf v. Perkins*, 127 Neb. 366, 255 N. W. 30.

Either the Cosmopolitan company or the Kansas City company must suffer as a result of the misconduct of the Federal Trust Company which was in reality a loan broker in this case. The Cosmopolitan Old Line Life Insurance Company sought to buy a loan from it just as the Kansas City company had a few years before. The service to be rendered was almost identical. The condition of the purchase was that the abstract be extended to date and show the mortgage as a first lien. It was not an unequivocal payment of the old mortgage. The money was entrusted to the Federal Trust Company on condition that it could secure a first mortgage. It never could in this case. Money paid to a loan broker to purchase notes secured by a first mortgage where subsisting liens must be paid is not such an unequivocal payment of a first mortgage as will discharge the secured debt.

The Cosmopolitan Old Line Life Insurance Company did not rely upon the Federal Trust Company as agent for the Kansas City Life Insurance Company but depended upon

the Federal Trust Company to perform the necessary acts to clear the title so that its mortgage would be a first lien. During that period it was not intended that the Kansas City company would be paid the amount due on its mortgage. The purchase of the mortgage by the Cosmopolitan company was a conditional one dependent upon a condition that was never realized. The Federal Trust Company was as much the agent of the Cosmopolitan company as it was of the Kansas City company. It is beside the issue to quibble over terms; justice and equity require that the Kansas City Life Insurance Company should not lose its security because a conditional refinancing plan did not materialize, and thus benefit the Cosmopolitan Old Line Life Insurance Company who made possible the loss by its action.

AFFIRMED.