B. R. COTTRILL *v.* FIRST HUNTINGTON NATIONAL BANK *et al.*

(No. 8496)

Submitted May 11, 1937. Decided June 22, 1937.

*Hogsett & Smith,* for appellant.

*Fitzpatrick, Brown & Davis, C. W. Strickling* and *Jackson N. Huddleston,* for appellees.

Fox, Judge:

B. R. Cottrill complains of a decree of the circuit court of Cabell County in favor of the New York Life Insur-

ance Company for the sum of $4,187.50, with interest on $3,000.00 thereof from September 16, 1936, entered upon the answer of said Insurance Company, praying for affirmative relief, in a chancery cause pending in said court in which Cottrill was plaintiff, and First Huntington National Bank, trustee, Mutual Company and New York Life Insurance Company were defendants, which decree provided for the sale of certain real estate owned by said Cottrill.

It appears from the record that on the 16th day of November, 1922, a written agreement was entered into between the Mutual Company and the New York Life Insurance Company by which the Insurance Company agreed to purchase from the Mutual Company loans on real estate, improved for residential purposes, under certain terms and conditions set out in said agreement, among which conditions were the following: That any loan purchased should be secured by mortgage on unencumbered real property, improved for and occupied as a residence, not to exceed fifty per cent of the value of the land and improvement thereon; that the papers evidencing the obligation and security should be on forms acceptable to the Insurance Company; that the obligation, if evidenced by notes, should be endorsed in blank and the instrument securing them duly assigned; that a policy of title insurance or an abstract of title, duly certified by a local attorney to be selected by the Insurance Company, should be furnished at the expense of the Mutual Company; that proper surveys should be made, locating the property, and fire insurance furnished with the usual mortgagee clause; that the Insurance Company should have six months from the date of the receipt of the papers evidencing and securing the loan to require the repurchase thereof by the Mutual Company; and that "during the life of any loan so purchased, without further notice from you, we (the Mutual Company) will require and furnish you with proper evidence of payment of taxes, and collect and remit to you in New York Exchange both principal and interest without charge." The agreement also contains certain stipulations with

respect to foreclosure, and provides that it may be terminated upon written notice, by either party. It appears that the Mutual Company, in operating under this agreement, fell into the practice of delaying settlement in full with its borrowers until after receiving from the Insurance Company settlement for the particular loan sold. This practice was the subject of extensive correspondence between the companies in 1924, the Insurance Company insisting that the Mutual Company should, in all cases, settle with the borrower in full before submitting the loan to it for purchase, even if it should be necessary for it to go to the banks to secure funds temporarily for that purpose, and this the Mutual Company agreed to do.

The Mutual Company was engaged in the business of loaning money on improved residential property in the City of Huntington, and the plaintiff, Cottrill, applied to it for a loan of $5,000.00, to be secured by property owned by him in said city. He states that he was led to apply for this loan from the Mutual Company by reason of what he understood was the practice of that company to permit advance payments to be made on the loan as the borrower might elect. In July, 1925, he made application for this loan on the forms commonly used by the Mutual Company, and the said application was forwarded to the Insurance Company on August 12th. A deed of trust and notes were executed, covering the loan and interest. Five notes were executed covering the principal, four for the sum of $500.00, payable on the first day of September, in the years 1926 to 1929, both inclusive, and one note for $3,000.00, due September 1, 1930. The deed of trust and notes were dated August 15, 1925, but the notes did not begin to bear interest until the first day of September of that year. At the same time, Cottrill executed interest notes, representing semi-annual payments of interest due on March 1st and September 1st of each year from 1926 to 1930, both inclusive. The notes for the principal sum were made payable to the Mutual Company or order; the interest notes were made payable to the Mutual Company at its place of business

in the City of Huntington. The deed of trust aforesaid was executed by Cottrill to First Huntington National Bank, trustee, and secured to the Mutual Company the payment of all said notes, and contained a provision that the makers thereof should have the right at any interest-bearing date after March 1, 1926, to anticipate the payment of the remaining notes, with accrued interest to date of payment. The notes for the principal sum contained a provision, endorsed on the back thereof, that the makers reserved the privilege to pay $100.00 or multiples thereof on any interest date by giving sixty days' written notice to the holder, such payment not to exceed one-fifth of the original amount in any one year, and providing also that the entire loan might be paid on any interest date, upon sixty days' written notice, by paying one-half of one per cent per annum for the unexpired term. Apparently there is a conflict in the provisions in the deed of trust and notes with respect to anticipation of payments.

The loan was consummated on these terms and the four notes of $500.00 each were paid in full, together with interest on the entire loan to March 1, 1930, payments being made by Cottrill to the Mutual Company and by it transmitted to the Insurance Company, and there is no question raised as to these payments. The amount in dispute is represented by the note of $3,000.00 maturing on September 1, 1930, and an interest note of $90.00, covering interest on the principal note, from March 1, 1930, to the date of its maturity.

Shortly after the loan was closed, Cottrill began making payments in excess of the amount of the notes falling due under the terms of the deed of trust. His practice was to pay to the Mutual Company various sums of money at his convenience and take its receipts therefor. At each interest-paying period he would make a settlement with the Mutual Company, and receive from it payments of interest on the money paid to it from the date paid to the interest payment date, which interest was paid to him by the Mutual Company's check. Out of the money so paid to the Mutual Company, sufficient

would be applied by it to pay the maturing principal and interest notes, and a new receipt would then be issued by the Mutual Company to Cottrill for any balance in its hands. This practice continued until the 19th of February, 1930, when Cottrill was notified by the Insurance Company to make all future payments to the First Huntington National Bank. In the meantime, at the interest-paying date, September 1, 1929, there was in the hands of the Mutual Company, made up of sums paid at various times to it by Cottrill, after paying the principal note and interest note then due, the sum of $1695.00, for which the Mutual Company executed to Cottrill its receipt. A further payment of $170.00 was made September 5, 1929, $190.00 on October 1, 1929, and $175.00 on January 31, 1930. The receipt for the $1695.00 reads as follows:

"Sept. 1, 1929.

Received from B. R. Cottrill $1,695.00 Exactly One Thousand Six Hundred Ninety Five Dollars and No Cents _____ Dollars Amount paid on Prin. and _____ Due on the First day of Sept. 1930.

On property located at No. 2140 Street 10th Ave. City Huntington.

Loan Number 412. 6% Interest.

The Mutual Company
By (signed) Lucy Harvey
Cashier."

The other receipts are in like form.

When Cottrill received notice to make future payments to the First Huntington National Bank, he made inquiry as to the status of his loan, and, according to his statement, for the first time, learned that the New York Life Insurance Company was the owner of his notes. He immediately employed counsel and communicated with the Insurance Company and advised it of the payments he had made to the Mutual Company which, as he says, he understood were to be applied as payments on his loan. The Insurance Company disclaimed any responsibility for the collections made by the Mutual

Company, other than those paid in liquidation of the notes as they matured, and declined to allow credit for the advance payments made to the Mutual Company. On maturity of the $3,000.00 note and the $90.00 interest note due September 1, 1930, Cottrill offered to pay to the insurance company the sum of $855.00 which he contended was the balance due on his notes, after applying the payments made by him to the Mutual Company. The Insurance Company declined to accept this sum, and shortly thereafter proceeded to enforce the deed of trust. Cottrill then instituted this suit, setting up the payments made by him, tendering the sum of $892.93, which he claimed to be due the Insurance Company as of October 15, 1930, asking for a release of the lien of the deed of trust, and also for an injunction against the sale of his property thereunder. The Insurance Company answered the bill, denying the material allegations thereof which supported the plaintiff's claim, and by way of affirmative relief, asserted its claim for the two notes of $3,000.00 and $90.00, respectively, and asked for a decree for the same and for a sale of the property covered by the deed of trust, under the terms of the same. Other pleadings were filed for the purpose of making up the issue between the parties and upon a final hearing of the case, the court below entered a decree for the Insurance Company for the sum of $4,187.50, which includes both the $3,000.00 note and the $90.00 note, allowing interest on $3,000.00 thereof from the date of the decree, and providing for a sale of the property covered by the deed of trust. The court also decreed that plaintiff, Cottrill, was not entitled to the credits claimed by him on account of his advance payments to the Mutual Company, and refused to allow credit for the amount of $892.93 paid into court; and denied to him the relief prayed for in his bill. From this decree, the plaintiff prosecutes this appeal.

The record presents three controlling questions: (1) The relation between the Insurance Company and the Mutual Company at the time of the loan, whether that of principal and agent or buyer and seller; (2) the

extent of the agency of the Mutual Company after the consummation of the loan; and (3) the obligation of the borrower with respect to the payment of his loan within the terms of his loan agreement.

The facts bearing on the first question are set out in the statement of facts herein and need not be repeated. Considering the loan purchase agreement made in 1922, and the correspondence between the companies in connection therewith had in 1924, we cannot escape the conclusion that the Insurance Company was endeavoring to maintain the standing of a purchaser, and create for itself the position of a holder in due course as to all loans it might acquire from the Mutual Company. The fact that in 1924 it insisted that loans made by the Mutual Company be fully consummated by the payment of the full amount of the loan to the borrower before the assignment of the loan and the endorsements of the notes evidencing the same, gives strong support to this view; and the further fact that the Insurance Company stipulated in its contract with the Mutual Company that it might, in case of dissatisfaction with the loan, and within six months after the presentation of the loan papers, require its repurchase by that company, strongly negatives the idea that the relation of principal and agent existed prior to and at the time of the consummation of the loan transaction with the borrower. The only circumstance which throws any doubt on this proposition is the fact that after the loan application was made to the Mutual Company by Cottrill, and before the consummation of the loan, the application, appraisement and other papers bearing thereon were submitted to the Insurance Company and its approval of the loan secured. We think this procedure amounted to no more than this: The Mutual Company offered to sell to the Insurance Company a loan which it, the Mutual Company, proposed to make; and the Insurance Company agreed to purchase the loan under its contract, when the same should be consummated by the execution of the papers securing the same, the payment of the loan to the borrower in full by the Mutual Company, and the assign-

ment thereof and endorsement of the notes representing the same. It was then of no consequence to the borrower what the relationship of the two companies was. His obligation was to pay the loan according to the terms of his contract; and he could as easily perform that obligation with one as the other, or even with a third party. He was in no wise prejudiced by the assignment of the loan and the endorsement of the notes. We see nothing in the entire transaction which deprives the insurance company of the position of a holder in due course of the notes representing the principal of the loan, and we find that it was such holder.

The agency of the Mutual Company to collect the notes representing the loan and the interest notes, as they matured, is admitted; but in the absence of special authority that agency did not extend beyond the right to collect the notes as they matured, or might be anticipated under the loan agreement.

> "A mortgagor paying indebtedness before maturity without ascertaining whether person receiving payment was owner or in possession of the papers had burden of showing authority to collect * * *. General authority to collect principal of mortgage when due did not authorize collection before maturity."

*Brants* v. *Runnels,* (Mo. App.) 26 S. W. (2d) 1004. To the same effect: *Catlin* v. *Reed,* 141 Okla. 14, 283 P. 549, 67 A. L. R. 1410; *Nichols* v. *MacDougal,* 175 Wash. 536, 27 Pac. (2d) 699; *Ilgenfritz* v. *Mutual Benefit Life Ins. Co.,* 81 Fed. 27; *Little Rock & F. S. Railway Co.* v. *Wiggins,* 65 Ark. 385, 46 S. W. 731; *Cunningham* v. *McDonald,* 98 Tex. 316, 83 S. W. 372; 1 Mechem on Agency, sections 955-959.

The burden of showing such authority was upon the plaintiff.

> "Payment is affirmative defense required to be proven, and where payment to an agent is alleged, agent's authority to receive payment must be shown."

*Bacot* v. *South Carolina Loan & Trust Co.*, 132 S. C. 340, 127 S. E. 562. He has not met this burden. Neither showing of direct authority, nor circumstances from which it may be implied appear in the record. It follows, therefore, that the agency of the Mutual Company, with respect to the collection of the notes in question, was limited to the collection of the notes as they matured, or the payments which might have been made in advance of maturity, at interest-paying dates and after the notice required in the loan contract. Even as to these advance payments, if made within the terms of the loan agreement, the borrower would have acted at his peril in making them without the production by the agent of the notes on which the payments were being made. He could only justify such payments by showing authority of the agent to receive them.

What was the obligation of the borrower with respect to the payment of his loan? When he executed negotiable notes, he knew that they might be transferred by endorsement or otherwise, and that he could not safely pay them except upon their production. If he paid the notes without requiring their production and cancellation, where full payment was made, and production and endorsement of credits in case of partial payment, he acted at his peril.

> "When payment is made to a person not having possession of the securities, properly endorsed, the burden of showing that such person was authorized to receive payment for the creditor rests upon the party who makes the claim of payment."

*Hoffmaster* v. *Black,* 78 Ohio St. 1, 84 N. E. 423, 21 L. R. A. (N. S.) 52. See also: *First Nat. Bank* v. *Chilson,* 45 Neb. 257, 63 N. W. 362; *Bautz* v. *Adams,* 131 Wis. 152, 111 N. W. 69, 120 Am. St. Rep. 1030; *Wooding's Ex'x.* v. *Bradley's Ex'r.,* 76 Va. 614, 615; *Griswold, Hallette & Persons* v. *Davis,* 125 Tenn. 223, 141 S. W. 205; *Budd* v. *Broen,* 75 Minn. 316, 77 N. W. 979; *Schenk* v. *Dexter,* 77 Minn. 15, 79 N. W. 526; *Wynn* v. *Grant,* 166 N. C. 39, 81

S. E. 949; *Federal Reserve Bank* v. *Gettlemann*, 117 N. J. Law 416, 189 A. 86; *Baldwin* v. *Adkerson*, 156 Va. 447, 158 S. E. 864, 103 A. L. R. 644; *Catlin* v. *Reed*, 141 Okla. 14, 283 P. 549, 67 A. L. R. 1410; *Holden* v. *Batten*, 215 Iowa 448, 245 N. W. 750; *Moron* v. *Tuttle*, 211 Iowa 584, 233 N. W. 691; *Knopf* v. *Perkins*, 127 Neb. 366, 255 N. W. 30, 31; *Davis* v. *Polak*, 126 Neb. 640, 254 N. W. 246; *Bank* v. *Nichols*, 101 W. Va. 553, 133 S. E. 129. We have found no decision in conflict with the principles above announced and our own case of *Bank* v. *Nichols, supra,* clearly supports this rule. In that case, Nichols executed a deed of trust to secure the payment of four notes of $875.00 each, payable to Sizemore. Sizemore endorsed two of the notes to the Wyoming County Bank as collateral security for his obligation to the bank. Nichols, not knowing of this transfer, paid the notes to Sizemore, and it was held that such payment was no defense in a suit instituted by the bank to collect the notes.

We have examined with care the numerous decisions cited by counsel for the appellant. As we view these cases, they refer to situations quite different from that presented herein. In but one case cited is the question of payments outside of the loan agreement in advance of maturity involved. They relate to payments made upon securities as they became due, and to the question of the authority of the agent, whether direct or arising from circumstances creating an implication of authority to collect, and many of them are cases where the relationship of principal and agent clearly existed, creating a situation under which the standing of a holder in due course did not arise. The case of *Roberts* v. *Tavenner*, 48 W. Va. 632, 37 S. E. 576, strongly relied upon by the appellant, was a case where the loan company acted as the agent of Roberts in making a loan to Tavenner. The note was made payable to the loan company and immediately endorsed to Roberts who had furnished the money loaned. Tavenner paid the note to the loan company. Shortly after this payment, the manager of the loan company told Roberts of this payment. Roberts did nothing about the matter until after the manager of the

loan company had absconded. He then instituted his suit against Tavenner. A reading of the case shows that the decision was not based upon any theory in conflict with those herein announced, but largely upon the failure of Roberts to take steps to protect Tavenner from the result of her paying the note to a person other than the owner thereof. The other case decided by this court is that of *Buckeye Saw Manufacturing Company* v. *Rutherford*, 65 W. Va. 395, 64 S. E. 444, in which an agent of the manufacturing company sold a circular saw, accepting a note from the purchaser therefor which he immediately endorsed to the manufacturing company, and in a suit on the note, the manufacturing company was refused the position of a holder in due course.

Stress is laid on the proposition, universally recognized that:

> "Where one of two innocent persons—that is, persons each guiltless of an intentional moral wrong—must suffer loss, it must be borne by that one who, by his conduct, acts, or omissions, has rendered the injury possible."

*Roberts* v. *Tavenner, supra.*

Giving every consideration to the unfortunate position in which plaintiff finds himself with respect to the transaction now being considered, we are unable to see where he is in a position to avail himself of the rule above referred to. The plaintiff had it in his power to make advance payments on his loan under the terms of his loan agreement. When he paid the note due September 1, 1929, he had made advance payments in excess of the note then due of $1695.00, which he could have applied as payment on the $3,000.00 note becoming due one year thereafter, had he given the notice provided for in his contract, and during all of the period in which he was making payments on his loan, the same could have been applied as payments thereon. Instead of taking this course which was open to him, he elected to make these payments to the Mutual Company and accept its receipts therefor with an agreement that he should re-

ceive interest on such payments. He permitted the Mutual Company to carry this money, in increasing amounts, and out of the same to pay his maturing notes. As evidence of this method, we find that the Mutual Company, at each interest-paying period, accounted with the plaintiff and paid him interest on advance payments which had been theretofore made, paid the then maturing note and executed a new receipt. He must have known that his payments were not being applied on the loan except as his notes matured. There is nothing in the record showing that the Insurance Company had any notice of these payments, until after the relationship between that company and the Mutual Company had been terminated. The Insurance Company had a right to rely upon the terms of its contract whereby payments were to be made at stipulated periods, and advance payments only made at interest-bearing dates, and after notice, in case of partial payments. Under these circumstances, it is difficult to find grounds for attaching blame to the Insurance Company for the misguided action of the plaintiff in making unauthorized payments to the Mutual Company. The plaintiff no doubt believed that the payments he was making would be applied to the reduction of his debt, as his notes matured, and no doubt acted in utmost good faith, but he made the mistake of entrusting his funds to the Mutual Company instead of seeing that they were applied to the payment of his notes outstanding.

The decree of the circuit court of Cabell County is affirmed.

*Affirmed.*